**UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD**

**2022 MSPB 36**

Docket No. DA-0752-17-0304-I-1

**George Haas,**

**Appellant,**

**v.**

**Department of Homeland Security,**

**Agency.**

November 7, 2022

Robert Glazer, Houston, Texas, for the appellant.

Judith M. Ubando, Esquire and Valerie Barnett, Houston, Texas, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

## OPINION AND ORDER

¶1      The appellant has filed a petition for review of the initial decision in this appeal, which affirmed his removal. For the reasons discussed below, we DENY the petition for review. We MODIFY the initial decision to apply the proper standards for the agency's charge and the appellant's equal employment opportunity (EEO) reprisal claim, VACATE the administrative judge's finding regarding recurrence of the appellant's symptoms, and otherwise AFFIRM the initial decision.

## BACKGROUND

¶2    The following facts, as set forth in the initial decision and the record, are undisputed.    Initial Appeal File (IAF), Tab 36, Initial Decision (ID). The appellant was employed as a Customs and Border Protection Officer (CBPO), a position that has medical standards.  ID at 2; IAF, Tab 8 at 129-38, 148-62.  He worked at the Port of Houston Airport, processing passengers as they arrived from outside the United States.  ID at 2; IAF, Tab 8 at 129-38, 148-62.  For many years, the appellant worked exclusively in the "Primary Inspection" area, which involves the initial questioning of passengers and inspection of their documents. ID at 2, 28 n.11.  On May 6, 2015, the agency assigned him to work part of his day in "Hard Secondary," which is the second step in the screening process for passengers who require additional questioning.  ID at 2-3.

¶3    The appellant objected to working in Hard Secondary, stating, as relevant here, that doing so would violate his medical restrictions.  ID at 3-5.  He sent an email to the agency's EEO office and one of his managers, asserting that he had a disability "which is permanent and limits and servilely [sic] interferes with a major life function."  IAF, Tab 8 at 115-16.  The email quickly came to the attention of the Port Director, who instructed the appellant to provide medical documentation about his ability to perform his duties.  *Id.* at 108-10, 114; ID at 4-5.  At the same time, the agency revoked the appellant's authority to carry a Government-issued firearm.  IAF, Tab 8 at 111-12; ID at 5.  When the appellant provided documentation reflecting a diagnosis of bipolar disorder, the agency deemed it insufficient to determine whether he met the medical requirements of his position.  IAF, Tab 8 at 98-107; ID at 5-6.  Therefore, the agency ordered him to attend first a medical fitness-for-duty examination and then a psychiatric independent medical evaluation (IME), in August and October 2015, respectively. ID at 6-8.

¶4    The IME psychiatrist agreed with the appellant's diagnosis of bipolar disorder and found the appellant was not symptomatic at the time of the

examination. IAF, Tab 8 at 28-29. However, he expressed concern that, when symptomatic, the appellant could exhibit "impairment in judgment . . . [and] insight, impulsivity, delusions, hallucinations, severe depression with suicidal thoughts and impaired cognition." *Id.* at 29. The IME psychiatrist stated that, in these circumstances, the appellant would be unable to make the "quick decisions required in law enforcement situations to protect the lives of self, the public and other law enforcement personnel." *Id.*

¶5     In December 2015, after receiving the results of the IME, the agency concluded that the appellant was unable to perform the essential functions of his position, with or without accommodation. *Id.* at 14, 16-18, 63-64; ID at 8. The agency searched for vacant funded positions over the following months but only found ones outside his local commuting area at lower grade levels. ID at 8. The agency offered these positions to the appellant, who declined them. *Id.* In August 2016, the agency offered the appellant the options of resigning, applying for retirement, or requesting assistance searching for reassignment to another agency, but the appellant failed to respond. *Id.*

¶6     In October 2016, the Port Director proposed the appellant's removal for inability to perform the essential duties of a CBPO. *Id.*; IAF, Tab 8 at 4-8. He stated that certain limitations on scheduling identified by the IME psychiatrist did not affect any essential function of the CBPO position. IAF, Tab 8 at 5. However, he identified other restrictions, such as the appellant's inability to exercise proper judgment, carry a firearm, or protect himself or others in law enforcement situations if his bipolar disorder were symptomatic, as rendering him unable to perform the essential functions of his position. *Id.* at 5-6.

¶7     The next month, the appellant responded to the proposed removal. ID at 8. At that time, the deciding official and the appellant agreed to search once again for any vacant positions to which he could be reassigned. *Id.* In January 2017, the agency located such a position, but the appellant rejected it 2 months later. ID at 9. Ultimately, in April 2017, the deciding official removed the appellant for

inability to perform the essential functions of his position. *Id.*; IAF, Tab 7 at 27-33.

¶8 The appellant filed the instant appeal, challenging his removal. IAF, Tab 1. After developing the record and holding his requested hearing, the administrative judge issued an initial decision that affirmed the removal. ID at 1, 35; IAF, Tab 1 at 2. She found that the agency met its burden of proving the charge. ID at 9-15. She considered whether new medical evidence presented by the appellant showed that he had recovered sufficiently to perform his duties, but found that it did not. ID at 15-18. She further found that the appellant failed to prove his affirmative defenses of disability discrimination, ID at 18-27, reprisal for protected EEO activity, ID at 27-29, and harmful procedural error, ID at 29-34. Finally, the administrative judge found that the agency met its burden of proving nexus between the appellant's inability to perform his duties and the efficiency of the service and that removal was reasonable. ID at 34-35. The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 1. The agency has filed a response. PFR File, Tab 3.

## ANALYSIS

Because the appellant's removal was not based solely on his medical history, 5 C.F.R. § 339.206 does not set forth the agency's burden to prove its charge.

¶9 The agency based the appellant's removal on a charge of "inability to perform the essential duties of a [CBPO]." IAF, Tab 8 at 4. In the lone specification underlying the charge, the agency asserted that the appellant was "unable to safely, efficiently or reliably perform the essential duties of a [CBPO]." *Id.* The agency explained that the duties of the CBPO position included, inter alia, carrying a firearm, performing apprehensions and arrests, exercising sound judgment, maintaining mental alertness at all times, and functioning under dynamic and stressful conditions in which there are concerns for national security and threats of terrorism. *Id.* at 6. The proposal further

explained that medical documentation indicated that his bipolar disorder could result in emotional instability and impaired cognition. *Id.* at 5, 29.

¶10    Though not raised by either party, we modify the initial decision to the extent that the administrative judge relied on 5 C.F.R. § 339.206 to analyze the agency's charge.  IAF, Tab 24 at 3; ID at 9; *see* 5 C.F.R. § 1201.115(e) (providing that although the Board normally will consider only issues raised by the parties on review, it reserves the authority to consider any issue in an appeal before it).  We take this opportunity to clarify the proper standard for the removal of an employee from a position with medical standards, such as the CBPO, based on a current medical condition that impacts his ability to safely and efficiently perform the core duties of his position.

¶11    As relevant here, 5 C.F.R. § 339.206 provides that an employee may not be removed from a position subject to medical standards "solely on the basis of medical history."[1]  The regulation provides an exception only if the condition itself is disqualifying, recurrence "is based on reasonable medical judgment," and the position's duties are such that a recurrence "would pose a significant risk of substantial harm to the health and safety of the . . . employee or others that cannot be eliminated or reduced by reasonable accommodation or any other agency efforts to mitigate risk."[2]  This regulation does not define the meaning of the term

---

[1] For the sake of simplicity, this decision will exclusively refer to positions with medical standards, but the regulation also applies to positions subject to "physical requirements" and those "under medical evaluation programs." 5 C.F.R. § 339.206.

[2] Effective March 21, 2017, five months after the agency proposed the appellant's removal but weeks before its effective date, the Office of Personnel Management amended 5 C.F.R. § 339.206 as to the degree of risk required.  5 C.F.R. § 339.206 (indicating an effective date of March 21, 2017); Medical Qualification Determinations, 82 Fed. Reg. 5340-01, 5346-47, 5352 (Jan. 18, 2017) (Final Rule), 82 Fed. Reg. 10959-01 (delaying the effective date of the Final Rule to March 21, 2017).  The previous version required only a "reasonable probability of substantial harm." 5 C.F.R. § 339.206 (2017).  Because we find, as discussed below, that the regulation does not apply to the agency's charge here, we need not address whether the changes to the regulation apply retroactively.

"medical history." However, 5 C.F.R. part 339 contains a provision stating that a "history of . . . medical condition(s) . . . includ[es] references to findings from previous examinations, treatment, and responses to treatment." 5 C.F.R. § 339.104(1). This explanation of medical history suggests that such a history exists when the employee's medical records indicate that he was examined or treated for the medical condition in question.

¶12     Similarly, the dictionary defines "history" to include "an account of a patient's medical background." Merriam-Webster's Collegiate Dictionary 549 (10th ed. 2002). Further, the Office of Personnel Management (OPM) expressed the intent that actions covered by 5 C.F.R. part 339 comply with the nondiscrimination provisions of the Rehabilitation Act of 1973 and the Americans with Disabilities Act (ADA) of 1990, as amended. 5 C.F.R. § 339.103(a). The ADA defines disability to include a "record of . . . an impairment," as distinct from having a current impairment. 42 U.S.C. § 12102(1)(A), (B). The ADA's implementing regulations provide that an individual has a record of impairment if he "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k). Given these definitions, we find that a removal is based solely on medical history if the only basis for concluding that the employee is medically unable to perform the core duties of his position is the fact that his medical records reflect that, at some time in the past, he was classified as having, was examined for, or was treated for the medical condition or impairment in question.

¶13     Contrary to our current finding and beginning with *Lassiter v. Department of Justice*, 60 M.S.P.R. 138, 141-42, 146 (1993), the Board applied 5 C.F.R. § 339.206 to all cases in which an appellant who was subject to medical standards was removed for medical inability to perform his position. It applied this standard regardless of whether an appellant's medical history was the sole basis for his removal. For example, in *Lassiter*, the Board recognized that the appellant

had not shown that he had been cured of his delusional paranoid disorder, which had been the basis for his removal. 60 M.S.P.R. at 145-46 & n.3. It nonetheless found that 5 C.F.R. § 339.206 represented the proper standard for the agency's charge because the appellant occupied a position subject to medical standards. 60 M.S.P.R. at 141-42. In making this finding, however, the Board failed to cite or consider the regulatory requirement that the appellant's removal be "solely on the basis of medical history." *See id.*; 5 C.F.R. § 339.206.

¶14 Following *Lassiter*, the Board continued to apply the same standard to cases involving present medical inability to perform. *See Sanders v. Department of Homeland Security*, 122 M.S.P.R. 144, ¶¶ 2, 11-16, 18-19 (applying the standard in 5 C.F.R. § 339.206 when an appellant was removed based on his inability to perform his duties due to an existing medical condition, rather than his medical history), *aff'd per curiam*, 625 F. App'x 549 (Fed. Cir. 2015); *Brown v. Department of the Interior*, 121 M.S.P.R. 205, ¶¶ 4, 8 (2014) (applying 5 C.F.R. § 339.206 when an appellant was removed based not only on her medical history but also on current physical restrictions affecting her ability to perform her job duties); *Slater v. Department of Homeland Security*, 108 M.S.P.R. 419, ¶¶ 6-7, 13-17 (2008) (finding that 5 C.F.R. § 339.206 applied to the removal of an employee due to his current diabetes-related polyneuropathy, which caused his inability to perform his duties safely and efficiently without undue risk of harm to self or others). These cases continued the error of applying 5 C.F.R. § 339.206 to a charge of inability to perform involving current medical conditions. We overrule this line of cases to the extent that the Board applied 5 C.F.R. § 339.206 to a charge of medical inability when the appellant was removed based on his current medical condition or impairment.

¶15 For cases involving a charge of inability to perform that do not fall under 5 C.F.R. § 339.206, the agency must prove either a nexus between the employee's medical condition and observed deficiencies in his performance or conduct, or a high probability, given the nature of the work involved, that his condition may

result in injury to himself or others. *Clemens v. Department of the Army*, 120 M.S.P.R. 616, ¶ 5 (2014); *Fox v. Department of the Army*, 120 M.S.P.R. 529, ¶¶ 24-25 (2014).[3] The Board has otherwise described the standard as requiring that the agency establish that the appellant's medical condition prevents him from being able to safely and efficiently perform the core duties of his position. *Clemens*, 120 M.S.P.R. 616, ¶ 5; *Fox*, 120 M.S.P.R. 529, ¶ 24.

¶16        The determination of whether the *Clemens* standard or the standard under 5 C.F.R. § 339.206 applies may well be outcome determinative in some cases. If section 339.206 is applied, an agency must prove that recurrence of the condition poses "a significant risk of substantial harm to the health and safety of the . . . employee or others that cannot be eliminated or reduced by reasonable accommodation or any other agency efforts to mitigate risk." *Supra* ¶ 11 & n.2. Here, the parties agree that the appellant has bipolar disorder. *E.g.*, IAF, Tab 7 at 36-38, Tab 8 at 28, 103. Although the appellant was "asymptomatic" at the time of his removal, the parties agree that he had this medical condition when he was removed. *E.g.*, IAF, Tab 7 at 36-38, Tab 8 at 28, 103. In removing the appellant, the agency cited to his bipolar disorder as causing him to be unable to carry a weapon or perform other functions related to law enforcement. IAF, Tab 8 at 6. If the standard from 5 C.F.R. § 339.206 were applied to the instant appeal, the agency would be required to prove that recurrence would pose a risk of harm, even though, as discussed below, the appellant's removal was not

---

[3] In both *Fox* and *Clemens*, the Board rejected the application of *Slater*, 108 M.S.P.R. 419, ¶¶ 6-7, 13-17, and 5 C.F.R. § 339.206 because the employees at issue did not occupy positions with medical standards. *Clemens*, 120 M.S.P.R. 616, ¶ 4; *Fox*, 120 M.S.P.R. 529, ¶ 24. But in doing so, those decisions suggested that the general standard for inability to perform could not apply to positions with medical standards. *Clemens*, 120 M.S.P.R. 616, ¶ 4; *Fox*, 120 M.S.P.R. 529, ¶ 25. Our decision in the instant appeal finds otherwise. Therefore, the caveat alluded to in *Clemens* and *Fox*—that the employee does not occupy a position with medical standards or physical requirements or that is subject to medical evaluation programs in order for the general standard to apply—is no longer operative.

solely based on his medical history of bipolar disorder, but also on his present inability to perform his core duties. IAF, Tab 7 at 28, 30-31, Tab 8 at 5-7.

¶17 The appellant argues, in essence, that his removal was based solely on his medical history. PFR File, Tab 1 at 10-14. For example, the appellant argues that because he was "asymptomatic" and his bipolar disorder was in "remission," the agency's determination that he was medically unable to perform his core duties is speculative. *Id.* at 10-11, 13-14. We disagree. The U.S. Court of Appeals for the Federal Circuit has found, and the Board has followed, that when "a party is diagnosed with a medical condition that is by its nature 'permanent or progressive' in severity, it will be assumed to continue to exist after the date of diagnosis absent rebuttal evidence of record to the contrary." *Pyles v. Merit Systems Protection Board*, 45 F.3d 411, 415 (Fed. Cir. 1995); *see Walker v. Department of Veterans Affairs*, 109 M.S.P.R. 158, ¶ 9 (2008). The National Institute of Mental Health explains that bipolar disorder is a lifelong illness characterized by "periods of unusually intense emotion, changes in sleep patterns and activity levels, and uncharacteristic behaviors," typically recurring over time. National Institute of Mental Health, *Bipolar Disorder*, https://www.nimh.nih.gov/health/topics/bipolar-disorder/index.shtml (last visited Nov. 7, 2022).

¶18 Although the appellant may not have exhibited symptoms to the IME psychiatrist or his health care providers, one of his health care providers indicated that his condition is chronic and that the appellant "is to be monitored for any acute decompensation." IAF, Tab 8 at 103. She further stated that it was not possible to predict the likelihood that an individual with bipolar disorder would decompensate and that any changes in the appellant's schedule could cause him to decompensate in mood. *Id.* at 99, 103. Further, the IME psychiatrist testified that individuals suffering from bipolar disorder may not realize in advance that they have become symptomatic. IAF, Tab 31, Hearing Compact Disc, Day 1 (HCD1) (testimony of the IME psychiatrist).

¶19     The appellant also asserts that it was unlikely he would become symptomatic because he successfully performed in his position for 17 years. PFR File, Tab 1 at 11-13.  He points to his "successful" performance ratings from October 1, 2012, to November 30, 2016, successful completion of training throughout his employment with the agency, and receipt of letters of commendation and awards.  *Id.* at 15-16; IAF, Tab 28 at 13-16, Tab 30 at 49-84. We are not persuaded that this evidence outweighs contrary evidence showing the appellant continued to have symptomatic episodes leading up to his April 2017 removal.  In particular, the IME psychiatrist described the appellant's prognosis as "guarded because of his history of worsening symptoms when under stress." IAF, Tab 8 at 28; HCD1 (testimony of the IME psychiatrist).  The appellant represented to the IME psychiatrist that he had a serious single car accident in 2008, after leaving work due to trouble thinking and focusing, as a result of what was diagnosed at the time as "work shift disorder."  IAF, Tab 8 at 24. Further, the appellant had what he described as a "relapse" in September 2014. IAF, Tab 7 at 96, Tab 8 at 101.  According to the appellant's health care provider, he reported to her in January 2015 that "mood reactivity had occurred at work in which he cussed a co-worker" and he had asked to start seeing a counselor.  IAF, Tab 8 at 101.   On forms the appellant submitted in connection with the August 2015 IME examination, he indicated that he suffered from episodes of depression, periods of anxiety, and sleep disorders.  *Id.* at 38.  In sum, at the time of his removal, the appellant had a present medical condition that could manifest symptoms at any time. *Id.* at 5.

We affirm the administrative judge's finding that the agency proved its charge, as modified to apply the correct standard.

¶20     Although the administrative judge applied what we have now determined to be the incorrect standard to the agency's charge, remand is unnecessary because the record is fully developed on the relevant issues.  *See, e.g.*, *Forte v. Department of the Navy*, 123 M.S.P.R. 124, ¶ 27 (2016) (deciding an issue on

review, rather than remanding, when the administrative judge applied an incorrect standard but the record was fully developed). As noted above, when as here the removal is based on a current medical condition, the agency must prove either a nexus between the employee's medical condition and observed deficiencies in his performance or conduct, or a high probability, given the nature of the work involved, that his condition may result in injury to himself or others. *Clemens*, 120 M.S.P.R. 616, ¶ 5; *Fox*, 120 M.S.P.R. 529, ¶¶ 24-25. In other words, the agency must establish that the appellant's medical condition prevents him from being able to safely and efficiently perform the core duties of his position. *Clemens*, 120 M.S.P.R. 616, ¶ 5; *Fox*, 120 M.S.P.R. 529, ¶ 24.

¶21    The Board has indicated that the core duties of a position are synonymous with the essential functions of a position under the ADA, as amended by the Americans With Disabilities Act Amendments Act of 2008 (ADAAA), i.e., the fundamental job duties of the position, not including marginal functions. *Clemens*, 120 M.S.P.R. 616, ¶ 6; 29 C.F.R. § 1630.2(n)(1). One of the bases for finding that a function is essential is that it is the "reason the position exists." *Clemens*, 120 M.S.P.R. 616, ¶ 6; 29 C.F.R. § 1630.2(n)(2)(i).

¶22    According to the relevant position description and associated medical standards, CBPOs are "frontline" uniformed, weapon-carrying border security officers whose "primary function" includes "detect[ing] and prevent[ing] terrorists and instruments of terror from entering the United States" and ensuring border security. IAF, Tab 8 at 129, 139, 148-50, 156, 162. A CBPO must be "prepared mentally and physically to respond to unexpected situations and have the functional capacity to defend self and others from threatening situations in which the use of deadly force may be necessary." *Id.* at 129. They "must be free of any organic, structural or functional impairment(s) or existing health problem(s) that would be aggravated in response to the work environment and/or would affect safe and efficient job performance." *Id.* Additionally, they must "exercise sound judgment, maintain mental alertness at all times, and function

under dynamic and stressful conditions in which there are time constraints, concerns for national security, and threats of terrorism." *Id.*

¶23 The agency based its charge on the appellant's inability to perform these functions of his position. IAF, Tab 7 at 30, Tab 8 at 6. The administrative judge found that these duties were essential functions of the appellant's position. ID at 9-10, 21. The parties do not dispute this finding.[4] PFR File, Tab 1 at 5, 14, Tab 3 at 12. Accordingly, we agree with the administrative judge's conclusion that the appellant's duties set forth above are essential, and thus, constitute core duties of his position. *See Clemens*, 120 M.S.P.R. 616, ¶ 6.

¶24 The administrative judge also determined that the agency proved that the appellant was medically unable to perform these core duties, thus proving its charge. ID at 9-15. She found persuasive the IME psychiatrist's testimony that the appellant was unable to use proper judgment, make quick decisions in law enforcement situations, or carry a weapon when symptomatic, as required for his position. ID at 9-15, 21. We agree with this conclusion and modify her reasoning to the extent that she relied on the standard in 5 C.F.R. § 339.206. ID at 9-15. In particular, we vacate as unnecessary the administrative judge's conclusion that recurrence of the appellant's symptoms could not be ruled out. ID at 15. Because the appellant's removal was not based solely on his medical history, the agency was required to establish only that his medical condition prevented him from being able to safely and efficiently perform the core duties of his position. *Clemens*, 120 M.S.P.R. 616, ¶ 5. The appellant's arguments as to

---

[4] In support of its charge, the agency also alleged that the appellant was unable to perform Hard Secondary duties. IAF, Tab 8 at 6. The administrative judge found that performing Hard Secondary inspections was an essential function of the appellant's position. ID at 15 n.4. She also concluded that he was medically unable to perform these duties. ID at 14-15. In light of our finding, below, that the appellant could not perform his position's duties as described herein, we do not address the parties' arguments related to whether Hard Secondary inspections were also an essential function of his position. PFR File, Tab 1 at 14-15, Tab 3 at 12.

the likelihood of recurrence are, therefore, misplaced, and we decline to address them further.  PFR File, Tab 1 at 10-14.

¶25    Nevertheless, in determining whether the agency has met its burden, the Board will consider whether a reasonable accommodation, short of reassignment, exists that would enable the appellant to safely and efficiently perform his core duties.  *Clemens*, 120 M.S.P.R. 616, ¶ 5.  The appellant relies on the current version of 5 C.F.R. § 339.206, which requires an agency to consider whether reasonable accommodation or other efforts may "eliminate[] or reduce[]" the risk of harm an employee poses to self or others, to argue that the agency could have reduced or eliminated the risk of recurrence if he were granted certain scheduling accommodations.[5]  PFR File, Tab 1 at 9-10.  However, because the agency did not remove the appellant solely based on his medical history, it was not required to prove that it could not eliminate or reduce the risk of recurrence via accommodation.  Rather, the agency removed the appellant because he was not medically able to perform the core duties of his CBPO position.  IAF, Tab 7 at 30, Tab 8 at 4-6, 9.  We agree with the administrative judge that the agency proved that it could not provide a reasonable accommodation that would enable the appellant to perform his position's core duties.  ID at 21-22.  In making this finding, the administrative judge relied on the opinion of the IME psychiatrist that the appellant had not been symptom free for sufficient time to be fit for a weapons-carrying position.  *Id.*  Specifically, the IME psychiatrist explained that, in his view, the appellant would need to remain symptom free and stable for 5 years before he *might* be fit to carry a weapon.  IAF, Tab 8 at 28-30; HCD1 (testimony of the IME psychiatrist).

---

[5] The parties agree that the appellant's scheduling restrictions did not affect his ability to perform the essential functions of his position.  PFR File, Tab 1 at 9-10; IAF, Tab 8 at 5.

¶26       To the extent that the appellant questions the administrative judge's reliance on the IME psychiatrist's opinion, we are not persuaded. PFR File, Tab 1 at 11-14. In reaching her conclusions, the administrative judge properly weighed the medical evidence. ID at 12-14; *see Brown*, 121 M.S.P.R. 205, ¶ 11 (recognizing that in assessing the probative weight of medical opinions, the Board considers whether the opinion was based on a medical examination and provided a reasoned explanation for its findings as distinct from mere conclusory assertions, the qualifications of the expert rendering the opinion, and the extent and duration of the expert's familiarity with the treatment of the appellant). For example, she considered that the IME psychiatrist met with the appellant for more than 4 hours, provided an extensive explanation of his conclusions, had relevant experience, and was certified in forensic psychiatry. ID at 12-14; IAF, Tab 8 at 20, 28-30. The appellant's health care providers expressed the belief that he was fit for duty. IAF, Tab 7 at 36-38, Tab 8 at 99, 102, Tab 28 at 10-12. The administrative judge found the opinions of the appellant's health care providers lacked reasoned explanations. ID at 14. The appellant provides no specific argument as to why the administrative judge's assessment was mistaken, and we can discern none.

The appellant failed to prove his disability discrimination claims.

¶27       The administrative judge denied all of the appellant's affirmative defenses. The appellant's petition for review focuses on whether the agency could have provided him with a reasonable accommodation and whether the agency retaliated against him for engaging in protected EEO activity. PFR File, Tab 1 at 15-19. Accordingly, we focus on these affirmative defenses. We also examine the administrative judge's analysis of the appellant's affirmative defense of disparate

treatment disability discrimination.[6]  ID at 18-29.  We affirm her findings as to all three of these affirmative defenses, as modified.

¶28      The Board adjudicates claims of disability discrimination raised in connection with an otherwise appealable action under the substantive standards of section 501 of the Rehabilitation Act.[7]  *Pridgen v. Office of Management & Budget*, 2022 MSPB 31, ¶ 35.  The Rehabilitation Act has incorporated the standards of the ADA, as amended by the ADAAA.  *Id.*  Therefore, we apply those standards here to determine if there has been a Rehabilitation Act violation.  *Id.*  In particular, the ADA provides that it is illegal for an employer to "discriminate against a qualified individual on the basis of disability."  42 U.S.C. § 12112(a).  A qualified individual with a disability is one who can "perform the essential functions of the . . . position that such individual holds or desires" with or without reasonable accommodation.  42 U.S.C. § 12111(8).  An employer is also required to provide reasonable accommodations to an otherwise qualified individual with a disability.  42 U.S.C. § 12112(b)(5).  Thus, both a claim of disability discrimination based on an individual's status as disabled and a claim based on an agency's failure to reasonably accommodate that disability require that the individual be "qualified."  *See Flaherty v. Entergy Nuclear Operations, Inc.*, 946 F.3d 41, 49, 53-56 (1st Cir. 2019) (explaining that a terminated employee could not succeed on his status-based and failure to accommodate disability discrimination claims when he could not prove he was otherwise

---

[6] We decline to disturb the administrative judge's findings that the appellant failed to prove his remaining affirmative defenses.  ID at 26-27, 30-34.  We also do not disturb her findings that that the appellant's removal is reasonable and promotes the efficiency of the service.  ID at 34-35.  The parties do not dispute these findings on review.

[7] Because we affirm the administrative judge's finding that the appellant failed to show that any prohibited consideration was a motivating factor in the agency's action, we need not resolve the issue of whether the appellant proved that discrimination or retaliation was a "but-for" cause of the agency's decisions. *See Pridgen v. Office of Management & Budget*, 2022 MSPB 31, ¶¶ 20-22, 29-33.

qualified for his position); *Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1172-73, 1179, 1182-83, 1190-91 (11th Cir. 2019) (remanding a terminated employee's disability discrimination claim for the district court to permit a jury to decide whether the appellant was a qualified individual); *Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019) (reflecting that disability discrimination claims under both disparate treatment and failure to accommodate theories require proof that the plaintiff was qualified); *Stevens v. Rite Aid Corporation*, 851 F.3d 224, 226-31 (2d Cir. 2017) (affirming a district court's dismissal of a discharged employee's reasonable accommodation claim because he was not a qualified individual with a disability); *McNab v. Department of the Army*, 121 M.S.P.R. 661, ¶¶ 6, 8 n.5, 9 (2014) (recognizing that only a qualified individual with a disability is entitled to relief for his claims of status-based disability discrimination and denial of reasonable accommodation, but denying his claim on other grounds); *Clemens*, 120 M.S.P.R. 616, ¶¶ 2, 10-11, 17 (reversing an administrative judge's finding that an agency denied reasonable accommodation, concluding, as relevant here, that the appellant was not a qualified individual); *Fox*, 120 M.S.P.R. 529, ¶ 34 (concluding that an appellant was not a qualified individual with a disability and therefore did not prove her claim that the agency wrongfully denied her reasonable accommodation); *Smith v. Department of Veterans Affairs*, 101 M.S.P.R. 366, ¶¶ 2-3, 9-11 (2006) (finding that an administrative judge properly rejected an appellant's status-based disability discrimination claim because he was not qualified); *Pickens v. Social Security Administration*, 88 M.S.P.R. 525, ¶ 7 (2001) (stating that an appellant alleging status-based disability discrimination must establish that she is a qualified individual with a disability); *Verla G. v. U.S. Postal Service*, EEOC Appeal No. 0120160990, 2018 WL 1061888, at *1-2 (Feb. 8, 2018) (providing that an employee alleging disparate treatment disability discrimination must prove, in pertinent part, that she is a qualified individual with a disability); 29 C.F.R. §§ 1630.4(a)(1), 1630.9(a)-(b) (reflecting, with exceptions not applicable here,

that "[i]t is unlawful" to discriminate against, or deny reasonable accommodation to, a "qualified" individual with a disability).[8]

¶29        In the past, the Board has, on occasion, omitted from its discussion of an appellant's burden to prove disability discrimination the requirement that he prove he is a qualified individual. *E.g.*, *Thome v. Department of Homeland Security*, 122 M.S.P.R. 315, ¶¶ 24-25 (2015) (omitting the qualified individual requirement from the discussion of disability discrimination); *Burton v. U.S. Postal Service*, 112 M.S.P.R. 115, ¶¶ 14-16 (2009) (omitting the qualified individual requirement from the analysis of a status-based disability discrimination claim); *Doe v. U.S. Postal Service*, 95 M.S.P.R. 493, ¶¶ 8-10 (2004) (omitting the qualified individual requirement from the discussion of a status-based disability discrimination claim), *overruled on other grounds by Marcell v. Department of Veterans Affairs*, 2022 MSPB 33, ¶ 7. To the extent this has caused confusion, we take this opportunity to clarify that only an otherwise qualified individual with a disability is entitled to relief under the ADA for a claim of status-based discrimination or denial of reasonable accommodation.[9]

---

[8] The Board generally defers to the Equal Employment Opportunity Commission (EEOC) on issues of substantive discrimination law unless the EEOC's decision rests on civil service law for its support or is so unreasonable that it amounts to a violation of civil service law. *Pridgen*, 2022 MSPB 31, ¶ 40.

[9] Some disability discrimination claims can be resolved without reaching the issue of whether an appellant is otherwise qualified. For example, in *Thome*, 122 M.S.P.R. 315, ¶ 25, the Board determined that the appellant did not prove her disability discrimination claim because she did not prove she was disabled. The Board did not address whether the appellant was qualified. *Id.* Because an appellant must prove both that she is disabled and qualified, the fact she did not prove she was disabled was determinative, and a finding on whether she was qualified was not necessary. Similarly, the issue of whether an individual is qualified may not be in dispute in every case. *See Pridgen*, 2022 MSPB 31, ¶ 38 n.11 (declining to address whether an appellant was a qualified individual with a disability because the parties did not dispute that she was).

¶30    The administrative judge determined that the appellant was not a qualified individual with a disability. ID at 19-24. Regarding reasonable accommodation, we agree with the administrative judge that the appellant could not perform his position's core duties. We also agree that performing these duties was an essential function of his position. While the appellant suggests that his performance history supports a finding that he is qualified, we disagree. Our conclusion is based on the nature of bipolar disorder, his work-related incidents between 2008 and 2015, the appellant's own representations of his condition, and medical opinions offered by both the agency and the appellant. *Supra* ¶¶ 17-19. Finally, the appellant has not identified an alternative position that he desires. *See Rosario-Fabregas v. Department of the Army*, 122 M.S.P.R. 468, ¶ 18 (2015) (indicating that an appellant failed to engage in the interactive process when, as relevant here, he did not identify any vacant, funded position to which the agency might have reassigned him), *aff'd*, 833 F.3d 1342 (Fed. Cir. 2016). Instead, the appellant rejected the agency's offers of reassignment. IAF, Tab 7 at 34-35, 42-43, 58-59, Tab 8 at 10. For the foregoing reasons, he cannot prevail on his claim of disability discrimination based on either a reasonable accommodation or disparate treatment theory.

The appellant failed to prove his EEO reprisal claim.

¶31    The administrative judge found that the appellant failed to prove that his protected EEO activity was a motivating factor in his removal. ID at 27-29. The motivating factor standard applies to claims of reprisal for engaging in activity protected under Title VII. *See Pridgen*, 2022 MSPB 31, ¶¶ 21-22, 30. Specifically, under Title VII, an appellant must show that the prohibited consideration was a motivating factor in the personnel action. *Id.* However, the Board recently recognized that a more stringent standard applies in the context of retaliation claims arising under the ADA, such that the appellant must prove that his prior EEO activity was a "but-for" cause of the retaliation. *Id.*, ¶¶ 43-47. As discussed below, we affirm the administrative judge's factual findings and reach

the same conclusion, while modifying the initial decision to apply the correct standard.

¶32     The administrative judge recognized that the appellant engaged in several protected activities on various dates between at least August 2014 and August 2015.  ID at 27-28.  Those protected activities included an EEO complaint alleging harassment and discrimination involving his disability, IAF, Tab 7 at 96, requests for reasonable accommodation, IAF, Tab 8 at 85-86, 99, Tab 28 at 28, 31, and requests for EEO counseling concerning allegations of disability discrimination and retaliation for requesting reasonable accommodation, IAF, Tab 8 at 115-16.   These activities are protected under the ADA, not Title VII.  *See Pridgen*, 2022 MSPB 31, ¶ 44 (recognizing that requesting a reasonable accommodation and challenging disability discrimination are activities protected by the ADA).  Because we agree with the administrative judge that the appellant failed to meet the lesser burden of proving his protected activity was a motivating factor in his removal, he necessarily failed to meet the more stringent "but-for" standard that applies to the appellant's retaliation claim.

¶33     The administrative judge acknowledged that the officials who proposed and decided the appellant's removal had prior knowledge of at least some of his protected activities.  ID at 28-29; *see, e.g.*, IAF, Tab 7 at 27-33, Tab 8 at 4-8, 48-49, 67-69, 108-10, 114-16.   But she ultimately credited their testimony denying that the appellant's protected activity had any effect on their actions.  ID at 29.  On review, the appellant argues that the administrative judge failed to discuss several matters that weigh against the Port Director's credibility.[10] PFR File, Tab 1 at 16-19.   As we understand his arguments, the appellant is

---

[10] Although the appellant generally asserted that the administrative judge erred in finding the proposing and deciding officials credible when they denied any improper motivation, PFR File, Tab 1 at 16, each accompanying argument pertains only to the proposing official, who was the Port Director, *id.* at 17-19.

implicating two credibility factors: the contradiction or consistency of this witness's testimony with other evidence and the inherent improbability of his version of events. *See Hillen v. Department of the Army*, [35 M.S.P.R. 453](#), 458 (1987) (recognizing these and other factors that must be considered in analyzing the credibility of witness testimony). The appellant asserts that there is no evidence corroborating the Port Director's testimony that he granted the appellant's request for accommodation; he never adequately explained why he initiated the fitness-for-duty examination but not the reasonable accommodation process in May 2015; his testimony about who decided to revoke the appellant's authority to carry a weapon was inconsistent with another witness's testimony; and the Port Director could not articulate who informed him that the appellant was unable to work in Hard Secondary. PFR File, Tab 1 at 17-18. He also argues that the administrative judge did not give sufficient weight to evidence that the Port Director's May 2015 letter requiring him to provide medical documentation was prompted by protected activity. *Id.* at 18. We are not persuaded.

¶34 An administrative judge's failure to mention all of the evidence of record does not mean that she did not consider it in reaching her decision. *Mithen v. Department of Veterans Affairs*, [122 M.S.P.R. 489](#), ¶ 14 (2015), *aff'd*, 652 F. App'x 971 (Fed. Cir. 2016). Not specifically discussing every evidentiary matter or credibility factor does not mean that an administrative judge failed to consider them. *Id.* Further, the Board must give deference to an administrative judge's credibility determinations when they are based explicitly or implicitly on the observation of the demeanor of witnesses testifying at a hearing. *Purifoy v. Department of Veterans Affairs*, [838 F.3d 1367](#), 1372-73 (Fed. Cir. 2016); *Haebe v. Department of Justice*, [288 F.3d 1288](#), 1301 (Fed. Cir. 2002). Here, the administrative judge implicitly relied on demeanor in finding that the Port Director credibly denied that the appellant's protected activity had any effect on his actions. ID at 29. The appellant's arguments do not provide sufficiently sound reasons for us to overturn the administrative judge's credibility findings.

Accordingly, the appellant has failed to prove that his protected activities were a motivating factor in his removal, much less a "but-for" cause of his removal. We affirm the initial decision, as modified by this Opinion and Order.

## ORDER

¶35      This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113 (5 C.F.R. § 1201.113).

## NOTICE OF APPEAL RIGHTS[11]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

---

[11] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

(1) **<u>Judicial review in general</u>**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision.  <u>5 U.S.C. § 7703</u>(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

(2) **<u>Judicial or EEOC review of cases involving a claim of discrimination</u>**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you</u>

receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under <u>5 U.S.C. § 2302</u>(b)(8) or other protected activities listed in <u>5 U.S.C. § 2302</u>(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[12]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. <u>5 U.S.C. § 7703</u>(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

---

[12] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:


/s/
_____
Jennifer Everling
Acting Clerk of the Board
Washington, D.C.