**UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| RICARDO P. HOWELL,<br>　　　　　Appellant, | DOCKET NUMBER<br>DC-0432-13-6622-I-2 |
| v. | |
| DEPARTMENT OF HOUSING AND<br>　　URBAN DEVELOPMENT,<br>　　　　　Agency. | DATE: January 18, 2023 |

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Juliette Niehuss</u>, Esquire, and <u>Jeremy Wright</u>, Esquire, Washington, D.C.,
　　for the appellant.

<u>Carl E. Hobbs II</u>, Esquire, and <u>Bianca Manns</u>, Washington, D.C., for
　　the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member
Vice Chairman Harris recused herself and
did not participate in the adjudication of this appeal.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

**REMAND ORDER**

¶1        The agency has filed a petition for review of the initial decision, which reversed the appellant's removal for unacceptable performance.  For the reasons discussed below, we GRANT the agency's petition for review.  We VACATE the initial decision and REMAND the case to the regional office for further adjudication consistent with *Santos v. National Aeronautics & Space Administration*, 990 F.3d 1355 (Fed. Cir. 2021), and the guidance below.

**BACKGROUND**

¶2        The appellant held the GS-12 Auditor position with the agency's Office of Inspector General, Headquarters Audit Division, Office of Audit.  *Howell v. Department of Housing and Urban Development*, MSPB Docket No. DC-0432-13-6622-I-1, Initial Appeal File (IAF), Tab 1 at 2; *Howell v. Department of Housing and Urban Development*, MSPB Docket No. DC-0432-13-6622-I-2, Appeal File (I-2 AF), Tab 67, Initial Decision (ID) at 2.[2]  In July 2012, the agency placed him on a 120-day performance improvement plan (PIP).  I-2 AF, Tab 12 at 83-101.  The agency later extended the PIP until January 2013, to account for the appellant's absence due to a death in his family.  *Id.* at 82.  In April 2013, the agency proposed the appellant's removal for unacceptable performance.  *Id.* at 71-81.  After the appellant responded, the agency removed him, effective August 2013.  *Id.* at 12, 14-18.  This appeal followed.  IAF, Tab 1.

¶3        The administrative judge held the requested hearing and issued an initial decision reversing the removal.  ID at 1.  Because she reversed the appellant's removal on other grounds, the administrative judge did not address his harmful error claim.  ID at 23 n.12.  She did, however, deny the appellant's affirmative defenses of retaliation for engaging in equal employment opportunity (EEO)

---

[2] The administrative judge initially dismissed this appeal without prejudice pending an ongoing equal employment opportunity claim, the appellant filed a petition for review of that dismissal, and the Board forwarded the matter for refiling, resulting in the separate docket numbers associated with this one matter.  ID at 3 n.3.

activity and discrimination on the bases of sex, race, national origin, and disability.  ID at 22-34.  The agency has filed a petition for review.  *Howell v. Department of Housing and Urban Development*, MSPB Docket No. DC-0432-13-6622-I-2, Petition for Review (PFR) File, Tab 1.  The appellant has filed a response, PFR File, Tab 8, and the agency has replied, PFR File, Tab 11.[3]

## DISCUSSION OF ARGUMENTS ON REVIEW

¶4      At the time the initial decision was issued, the Board's case law stated that, to prevail in a performance-based removal appeal under chapter 43, the agency must establish the following by substantial evidence:  (1) the Office of Personnel Management (OPM) approved its performance appraisal system and any significant changes thereto; (2) the agency communicated to the appellant the performance standards and critical elements of his position; (3) the appellant's performance standards were valid under 5 U.S.C. § 4302(b)(1); (4) the agency warned the appellant of the inadequacies of his performance during the appraisal period and gave him a reasonable opportunity to demonstrate acceptable performance; and (5) the appellant's performance remained unacceptable in one or more of the critical elements for which he was provided an opportunity to demonstrate acceptable performance.  *Lee v. Environmental Protection Agency*,

---

[3] In addition to the petition for review, response, and reply pleadings, PFR File, Tabs 1, 8, 11, the record includes several additional filings.  The appellant filed a separate motion to dismiss the agency's petition for review because the agency had not provided interim relief.  PFR File, Tab 5; *see generally* 5 C.F.R. § 1201.116(a) (requiring that an agency's petition for review generally be accompanied by certification that it has provided interim relief, if the initial decision ordered interim relief).  The agency filed a response, rightly noting that the administrative judge did not order interim relief.  PFR File, Tab 7; ID at 35-41; *see Cole v. Department of the Air Force*, 120 M.S.P.R. 640, ¶ 20 n.5 (2014) (denying an appellant's request to dismiss an agency's petition for review for failing to provide interim relief because the administrative judge did not order interim relief).  The appellant then filed a pleading requesting that the Board order immediate interim relief, PFR File, Tab 9, to which the agency also responded, PFR File, Tab 13.  Because the administrative judge did not order interim relief, his request for such relief is denied.

115 M.S.P.R. 533, ¶ 5 (2010).[4]  Substantial evidence is the "degree of relevant evidence that a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion, even though other reasonable persons might disagree."  5 C.F.R. § 1201.4(p).

¶5      The administrative judge found that the agency met its burden for criteria (1), (2), and (3).  ID at 6-11.  However, she found that the agency failed to prove that it afforded the appellant a reasonable opportunity to improve, as required by criterion (4), or that the appellant's performance remained unacceptable, as required by criterion (5).  ID at 12-22.  We do not reach any conclusions as to criteria (4) and (5) at this time because we must remand this appeal for the agency to prove an additional criterion that was not addressed during the proceedings below.[5]

Remand is required in light of *Santos*.

¶6      During the pendency of the petition for review in this case, the U.S. Court of Appeals for the Federal Circuit held in *Santos*, 990 F.3d at 1360-61, 1363, that in addition to the five elements of the agency's case set forth above, the agency must also "justify the institution of the PIP" by proving by "substantial evidence that the employee's performance was unacceptable . . . before the PIP."  The Federal Circuit's decision in *Santos* applies to all pending cases, including this one, regardless of when the events took place.  *Lee v. Department of Veterans Affairs*, 2022 MSPB 11, ¶ 16.  Accordingly, we remand the appeal to give the parties the opportunity to present argument and additional evidence on whether

---

[4] Although *Lee* provides that performance standards must be valid under 5 U.S.C. § 4302(b)(1), the National Defense Authorization Act of 2018 redesignated subsection 4302(b) as subsection 4302(c). Pub. L. No. 115-91, § 1097(d)(1)(A), 131 Stat. 1283, 1619 (2017). Accordingly, 5 U.S.C. § 4302(c)(1) now sets forth the statutory requirements for a valid performance standard.

[5] The parties have not disputed the administrative judge's findings concerning criteria (1), (2), or (3). Therefore, we have not addressed them here. *See* 5 C.F.R. § 1201.115 (reflecting that the Board normally will consider only the issues raised by the parties on review).

the appellant's performance during the period leading up to the PIP was unacceptable in one or more critical elements. *See id.*, ¶¶ 15-17. On remand, the administrative judge shall accept argument and evidence on this issue, and shall hold a supplemental hearing if appropriate. *Id.*, ¶ 17.

On remand, the administrative judge should further develop the record and revisit her findings as to whether the agency gave the appellant a reasonable opportunity to improve and demonstrate acceptable performance.

¶7　　To determine whether an agency has afforded an employee a reasonable opportunity to improve, relevant factors include the nature of the duties and responsibilities of the employee's position, the performance deficiencies involved, and the amount of time which is sufficient for the employee to demonstrate acceptable performance. *Lee*, 115 M.S.P.R. 533, ¶ 32. An agency may fail to meet these criteria if it does not provide an appellant with the supervisory assistance promised in the PIP. *E.g.*, *Thompson v. Department of the Army*, 122 M.S.P.R. 372, ¶¶ 20, 30 (2015); *Thompson v. Farm Credit Administration*, 51 M.S.P.R. 569, 579 (1991); *Adorador v. Department of the Air Force*, 38 M.S.P.R. 461, 464-66 (1988).

¶8　　The administrative judge found below that the agency failed to meet its burden of proving that it provided a reasonable opportunity to improve, primarily based on her conclusion that the agency failed to fulfill its self-imposed obligation to meet with the appellant every 2 weeks. ID at 13-17. The administrative judge determined that the parties provided contradictory testimony on this point and she made credibility determinations in favor of the appellant's version of events. ID at 14-15.

¶9　　The Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing and may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002) (explaining

the deference afforded to an administrative judge's credibility findings); *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987) (recognizing relevant factors for assessing credibility).  The Board may find sufficiently sound reasons to overturn such determinations if they are incomplete, inconsistent with the weight of the evidence, and do not reflect the record as a whole.  *Faucher v. Department of the Air Force*, 96 M.S.P.R. 203, ¶ 8 (2004).  As further explained below, we find that the administrative judge must revisit her credibility findings on remand because she did not properly characterize some witness testimony and failed to account for evidence corroborating the agency's version of events.  *Id.*, ¶¶ 11-18 (overturning an administrative judge's credibility finding regarding a witness who did nothing when the appellant allegedly sexually harassed her because the administrative judge failed to take into account either the witness's explanation for her inaction or the corroborating statements of other witnesses).

¶10        The organizational structure of the appellant's supervisory chain and a timeline are particularly relevant for analyzing whether the appellant was provided a reasonable opportunity to improve during the July 2012 to January 2013 PIP.  During the PIP, the appellant was assigned to a Departmental Enforcement Center (DEC) review project.  I-2 AF, Tab 12 at 101.  As an Auditor on the DEC review project, the appellant worked closely with the Auditor in Charge (AIC) assigned to that project.  I-2 AF, Hearing Transcript (HT) at 9-10 (testimony of the AIC), I-2 AF, Tab 55, Hearing Compact Diskette (HCD) (testimony of the appellant, 7:53, 8:11).[6]  The AIC testified that her role was not supervisory, but it did require that she provide first-level approval of the appellant's work on the DEC review project and assess his performance.  HT at 14, 50-52 (testimony of the AIC).  She further testified that, as the AIC, she

---

[6] Although the parties provided the Board with transcripts for much of the hearing, some testimony, including the appellant's, is not transcribed.  Therefore, in some instances we have cited to the hearing transcript and in others to the hearing compact diskette.

reviewed the appellant's work at least once or twice a week. *Id.* at 10-11. The appellant's supervisor at the beginning of his PIP was a Deputy Director; however, she became the Acting Director partway through the PIP, around the August to September 2012 timeframe. An Assistant Director began actively supervising the appellant around the same August to September 2012 timeframe. HT at 124, 158-59 (testimony of the Deputy Director), 308-11 (testimony of the Assistant Director).

¶11 The Deputy Director issued the appellant's PIP. I-2 AF, Tab 12 at 82-83. Among other things, the PIP indicated that she would be monitoring the appellant's performance and she would be supervising the project for which he was responsible, the appellant was expected to advise her of any significant developments or problems, and she would meet with him every other week to discuss his progress. *Id.* at 83, 100-01. However, as previously discussed, organizational changes resulted in her taking on a more senior role during the PIP and the Assistant Director became more active in supervising the appellant. HT at 124, 158 (testimony of the Deputy Director), 308-11 (testimony of the Assistant Director). Nevertheless, the Deputy Director testified that:

> I met with—I think they were like every two weeks. The meetings were every two weeks to discuss the PIP and where [the appellant] was in terms of training, whether he needed additional resources, whether he needed any additional help on the assignment. But . . . the meetings sometimes would end because [of the appellant's behavior].

HT at 160-61 (testimony of the Deputy Director).

¶12 The administrative judge discussed the Deputy Director's testimony, generally. While doing so, her analysis included the following:

> [The Deputy Director] testified that she met with the appellant and [the Assistant Director] every 2 weeks during the PIP but that the meetings ended because of the appellant's behavior. She did not indicate in her testimony how many meetings were held or when she stopped holding the meetings. Nor did she explain what it was about

> the appellant's behavior that she found so problematic as to cause her to stop holding the meetings.

ID at 14. Although the administrative judge seems to have construed the Deputy Director's testimony as demonstrating that the meetings completely stopped, we read the testimony as suggesting that the meetings were held every 2 weeks, but some were cut short due to the appellant's behavior. HT at 160-61 (testimony of the Deputy Director).

¶13          Further, although the administrative judge faults the Deputy Director for not explaining what it was about the appellant's behavior that she found so problematic, the transcript shows that the administrative judge did not permit testimony on this issue because the appellant was not charged with misconduct. *Id.* Administrative judges have broad discretion in regulating the course of the hearing, but we find that it was an abuse of that discretion to exclude testimony about the appellant's conduct at PIP meetings and then rely, in part, on the absence of that testimony to find that the agency failed to meet its burden. *See Beck v. Department of the Navy*, 997 F.3d 1171, 1184-86 (Fed. Cir. 2021) (finding that administrative judges abused their discretion by preventing an appellant from deposing witnesses relevant to his case); *see generally Thomas v. U.S. Postal Service*, 116 M.S.P.R. 453, ¶ 4 (2011) (explaining that an administrative judge has broad discretion to regulate the course of the hearing and exclude evidence that has not been shown to be relevant or material, but a party may establish an abuse of that discretion if the disallowed evidence could have affected the outcome); *Fulton v. Department of the Army*, 95 M.S.P.R. 79, ¶¶ 11-16 (2003) (recognizing that although administrative judges have broad discretion to exclude witnesses if a party has not shown their testimony would be relevant, material, and nonrepetitious, the administrative judge abused his discretion by excluding certain witnesses that would have provided relevant testimony).

¶14     At the hearing, the Assistant Director also described meeting with the appellant on a regular basis. HT at 337-38, 340-41 (testimony of the Assistant Director). The agency asked what kind of meetings he had with the appellant during the PIP and the Assistant Director responded, "we had informal meeting[s], and we had progress status – progress meeting[s]. The progress meeting used to be every two weeks." HT at 340. The Assistant Director also stated that he talked with the appellant, informally, at least once a week. *Id.* at 341. In addition, the Assistant Director's proposal to remove the appellant described holding PIP meetings with the appellant and the Deputy Director, and indicates that some were unproductive because of the appellant's attitude. I-2 AF, Tab 12 at 77. Despite this testimony and evidence, the administrative judge found that the Assistant Director "did not mention any meetings with the appellant and [the Deputy Director] in his hearing testimony. That seems particularly odd if, as [the Deputy Director] asserted, those meetings ceased because of the appellant's behavior." ID at 15.

¶15     The administrative judge found that the appellant testified that the Deputy Director did not give him any feedback during the PIP. ID at 14. However, this overlooks or at least oversimplifies the appellant's actual testimony. The appellant did testify that he felt as if he did not receive sufficient feedback from the Assistant Director for purposes of improving, and the Deputy Director "was not involved at all in the PIP." HCD (testimony of the appellant, 8:01). However, he later acknowledged having meetings with the Deputy Director in her office during the PIP period, without indicating how often they occurred or suggesting that they altogether ceased at some point. HCD (testimony of the appellant, 8:55).

¶16     Aside from the appellant's testimony on this matter, the appellant's response to the proposed removal also included an assertion that the Assistant Director "began attending the PIP meetings in mid-October," which further evidences the existence of these meetings, generally. I-2 AF, Tab 12 at 41. The

administrative judge appears to have overlooked that evidence. ID at 14-15. She also appears to have overlooked relevant language in the proposal to remove the appellant. *Id.* The administrative judge acknowledged one notation about the Assistant Director and the AIC meeting with the appellant to provide feedback, finding that it supported a conclusion that the Deputy Director did not participate in PIP meetings. ID at 15 (citing I-2 AF, Tab 12 at 80). However, she did not acknowledge other notations in the proposal, which specifically described the Assistant Director and the Deputy Director holding PIP progress meetings with the appellant. I-2 AF, Tab 12 at 72, 77.

¶17 We appreciate the administrative judge's concern that the agency failed to present detailed documentary evidence of biweekly PIP meetings. ID at 15-16; *cf. Thompson*, 122 M.S.P.R. 372, ¶¶ 20-26 (crediting an appellant's testimony that his supervisor provided only 2 of the 21 promised meetings during an improvement period, over testimony from the supervisor to the contrary, in part because the agency failed to present meeting notes or memoranda). We also recognize the appellant's general assertion that he did not receive adequate feedback. HCD (testimony of the appellant, 8:01). Nevertheless, the substantial evidence burden of proof is not a high one.[7] *See, e.g.*, *Towne v. Department of the Air Force*, 120 M.S.P.R. 239, ¶ 6 (2013) (recognizing that substantial evidence is a lesser standard of proof than preponderance of the evidence and, to

---

[7] The administrative judge also observed that the Assistant Director, who was actively serving as the appellant's first-line supervisor by August or September 2012, was not aware of pertinent aspects of the PIP, including the performance deficiencies that led to it or the specific requirements of it, until he received a copy of the PIP in November 2012. ID at 15-17. According to the administrative judge, the approximate 44-day period after which the Assistant Director had a copy of the appellant's PIP letter containing the exact requirements of the PIP was insufficient to afford the appellant a reasonable opportunity to improve. *Id.* On remand, the administrative judge should consider whether evidence regarding the existence of performance meetings with the Deputy Director and the appellant's own admission that the Assistant Director "began attending the PIP meetings in mid-October," is sufficient for the agency to meet its burden to show that it provided the appellant with an opportunity to improve. I-2 AF, Tab 12 at 41.

meet this standard, the agency's evidence need not be more persuasive than that of the appellant).

¶18 To summarize, the appellant's PIP ran for a lengthy period, between July 2012 and January 2013. Among other things, the record includes testimony from the AIC that she reviewed the appellant's work on the DEC review project throughout the PIP and provided feedback. HT at 10-11, 79, 101 (testimony of the AIC). It also includes testimony from the Assistant Director and Deputy Director that they regularly met with the appellant and provided feedback. HT at 160-61 (testimony of the Deputy Director), 340-41 (testimony of the Assistant Director). Their testimony is supported by the appellant's testimony and documentation showing work he produced during the PIP with critiques of that work from both the AIC and the Assistant Director and specific instructions for the appellant to make revisions. I-2 AF, Tab 22 at 21-29, Tab 23 at 4-36, Tab 24 at 4-24; HCD (testimony of the appellant, 8:55). Additionally, the record includes a detailed memo memorializing an October 2012 meeting between the appellant, the Assistant Director, and the AIC describing the appellant's deficiencies, specific areas of concern, and recommendations for moving forward. I-2 AF, Tab 25 at 9-10. Subsequent messages memorialize a December 2012 meeting between the same individuals, also talking about areas of needed improvement and corresponding resources. *Id.* at 5, 7. The record also includes evidence of the appellant completing a number of training courses during the relevant period, consistent with the agency's promise that it would look for and schedule training that would help improve his performance. *Compare* I-2 AF, Tab 12 at 100, *with* I-2 AF, Tab 27 at 26.

¶19 On remand, the administrative judge should allow the parties to submit additional argument and evidence regarding the PIP meetings, because she hindered the parties' ability to do so below. She must then issue new and complete findings as to whether the agency proved by substantial evidence that it gave the appellant a reasonable opportunity to improve and demonstrate

acceptable performance. Among other things, those findings should consider and address the evidence described above.

On remand, the administrative judge should make new findings as to whether the agency met its burden of showing that the appellant's performance remained unacceptable.

¶20    In placing the appellant on the PIP, in July 2012, the agency explained that his performance had fallen below acceptable levels in seven core competencies across all three of his critical elements. I-2 AF, Tab 12 at 84, 95, 99. In its April 2013 proposal to remove him, the agency indicated that the appellant's performance remained unacceptable in three core competencies across two critical elements. *Id.* at 71, 76-80. Specifically, the agency determined that his performance remained unacceptable for the "professional knowledge" core competency and its parent critical element, "job knowledge and technical skills," as well as the "technical skills" and "analytical skills" core competencies and their parent critical element, "application of job knowledge and technical skills." *Id.* at 76-79.

¶21    The administrative judge did not substantively address whether the appellant's performance remained unacceptable. Instead, the administrative judge concluded that the agency failed to meet its burden for this criterion because the appellant's performance standards of record differed from the standards used for his removal. ID at 18-22. According to the administrative judge, those inconsistencies were fatal to the agency's case. *Id.* We disagree.

¶22    The appellant's performance plan of record, as signed by the appellant each year and further documented by the agency's official performance appraisal manual, identifies the critical elements of his position and defines four rating levels. I-2 AF, Tab 13 at 6-17, Tab 17 at 4-26, Tab 26 at 10, 30-31, Tab 27 at 16-24. Most relevant to this appeal, the plan defines the lowest two ratings as:

> Fully Successful: The employee's performance demonstrates achievement of, or substantial progress toward, meeting the core competencies. Employees must average a "2" or higher on the core

competencies identified within the Element in order to be rated Fully Successful for the Element overall.

Unacceptable: The employee's performance fails to demonstrate achievement of or progress toward achievement of any one of the core competencies within the Element; performance has a negative consequence on organizational goals. Employees must be rated Unacceptable for the overall Element if any of the core competencies are rated "1" within the Element.

I-2 AF, Tab 13 at 6, Tab 26 at 30-31.[8] If an employee is unsuccessful in one or more critical elements, his summary rating will likewise be unacceptable. I-2 AF, Tab 13 at 6. Based on this performance plan, if all other chapter 43 requirements are met, a rating of "1" in any core competency would support a performance-based removal. *Id.*; *see Lee*, 115 M.S.P.R. 533, ¶ 5; *see also Wallace v. Department of the Air Force*, 879 F.2d 829, 834 (Fed. Cir. 1989) (recognizing that an appellant's failure to meet a single component of one critical element may be sufficient to justify removal for unacceptable performance).

¶23    As the administrative judge correctly noted, the agency's various documentation and testimony contain some inconsistent or imprecise language in describing the appellant's performance and performance expectations. ID at 18-22. For example, in one notation, the PIP provided the following: "[a]s stated in your performance plan, in order for performance to be considered as being at the Fully Successful level for a GS-12, you must generally and with consistency meet the standards identified at the Fully Successful level." I-2 AF, Tab 12 at 85; ID at 17 n.11, 21-22. However, that is not the language used in the appellant's performance plan. *See supra* ¶ 22. The statement is also circular,

---

[8] The agency's official performance appraisal manual provides different definitions for different employees. I-2 AF, Tab 26 at 29-31. Based on that manual, the performance of Office of Audit employees can be deemed "unacceptable" based on a single core competency, but employees in some other components can be deemed "unacceptable" only if they are deficient in a majority of core competencies. *Id.* The appellant has acknowledged that he was employed in the Office of Audit. IAF, Tab 1 at 2.

essentially warning that the appellant would not be fully successful unless he met the fully successful standards. In another example, the Assistant Director's appraisal of the appellant after the PIP included a form on which he selected ratings for each critical element and its corresponding core competencies. I-2 AF, Tab 48 at 2-13; ID at 19-21. Although the Assistant Director completed the form consistent with the appellant's actual performance plan, in which failure in a single core competency warranted an "unacceptable" rating for its parent critical element, the form's instructions described a performance standard that did not apply.[9] *Compare* I-2 AF, Tab 13 at 6, *with* I-2 AF, Tab 48 at 3-8.

¶24 Elsewhere, in the proposal to remove the appellant, the agency introduced additional language. While discussing the "professional knowledge" core competency, the proposal indicated that the appellant "more than occasionally failed to demonstrate a complete understanding and knowledge of different parts of a work paper." I-2 AF, Tab 12 at 76; ID at 20. However, that language is not in the appellant's performance plan.

¶25 Although we appreciate the administrative judge's concern for these and other similar instances of the agency using inconsistent or imprecise language, as well as the Assistant Director's mistakenly using an inapplicable form, ID at 18-22, we disagree that they are fatal to the agency's case. The appellant's performance standards remained the same before, during, and after the PIP. The agency is required to present merely substantial evidence that the appellant's performance remained unacceptable in one or more of the critical elements for which he was provided an opportunity to demonstrate acceptable performance,

---

[9] The form's instructions provided that a critical element rating was based on the majority of its core competencies. I-2 AF, Tab 48 at 3. That standard is consistent with the performance standard for employees in offices other than the appellant's. *See supra* ¶ 22 n.8. The administrative judge discussed the standard described on the form, without acknowledging either that the standard applied to those other employees or that the Assistant Director ignored those standards and properly completed the form consistent with the appellant's performance plan. ID at 19-20.

i.e., his "performance fail[ed] to demonstrate achievement of or progress toward achievement of any one of the core competencies within the Element; performance ha[d] a negative consequence on organizational goals." I-2 AF, Tab 13 at 6; *Lee*, 115 M.S.P.R. 533, ¶ 5.

¶26    Because we are remanding this appeal, we do not make findings on whether the agency met its burden to show the appellant's performance was unacceptable while on the PIP. As the hearing officer, the administrative judge is in the best position to make factual findings and detailed credibility assessments on this issue. *Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶ 27 (2015). If, after any additional evidence presented on remand, she finds that the agency gave the appellant a reasonable opportunity to improve and demonstrate acceptable performance, she should make new findings as to whether the agency met its burden to prove, by substantial evidence, that the appellant's performance remained unacceptable. These findings should be consistent with our analysis, above, of this issue.

On remand, the administrative judge should make new findings as to the appellant's EEO reprisal claim.

¶27    As noted above, the administrative judge denied the appellant's affirmative defenses of retaliation for engaging in EEO activity, discrimination on the bases of sex, race, and national origin, and disability discrimination on the basis of a failure to accommodate. ID at 22-34. The appellant does not challenge these findings on review. Nonetheless, we have reviewed the administrative judge's findings and discern no basis to disturb her findings regarding the appellant's race, sex, national origin, and disability discrimination claims.[10]

---

[10] As the administrative judge considered the appellant's claims of sex discrimination, race discrimination, national origin discrimination, and EEO reprisal, she applied the burden shifting scheme set out in *Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶ 51 (2015). ID at 23-24. Regarding the sex, race, and national origin discrimination claims, the administrative judge found that the appellant failed to prove that any of those considerations was a motivating factor in this removal action. ID at 31-34. During the period that followed the initial decision, the Board found that, in order to

¶28    Turning to the appellant's EEO activity, the administrative judge found that the appellant proved that a prior discrimination claim was a motivating factor in his removal, ID at 24-29, but the agency proved that it would have taken the same removal action in the absence of that improper motive, ID at 29-31.  During the period that followed the initial decision in this appeal, the Board recognized that although the motivating factor standard applies to claims of reprisal for engaging in activity protected under Title VII, an appellant must prove but-for causation in the first instance for a claim of reprisal for engaging in activity protected under the Americans with Disabilities Act Amendments Act of 2008.  *Pridgen v. Office of Management & Budget*, 2022 MSPB 31, ¶¶ 16, 21, 35-40; *Haas v. Department of Homeland Security*, 2022 MSPB 36, ¶ 32.  Accordingly, the nature of the appellant's EEO activity is relevant, but the nature of that activity is not apparent to us—the initial decision and numerous pleadings submitted by the parties simply refer to the appellant's EEO activity as discrimination claims, generally.  *E.g.*, ID at 24-28; I-2 AF, Tab 61 at 24-28.

¶29    In issuing a remand initial decision, the administrative judge should make new findings regarding the appellant's EEO reprisal claim, applying the proper standard or standards.  We recognize that her analysis is, absent new evidence, unlikely to alter her conclusion that the appellant's affirmative defense of EEO reprisal fails.  *See Pridgen*, 2022 MSPB 31, ¶ 21 n.4 (noting that some courts consider but-for standard to be more onerous).  Nonetheless, we find it appropriate to remand this issue to the administrative judge to make findings in the first instance.

---

attain full relief for claims arising under Title VII, the appellant must prove that discrimination was a but-for cause of the action. *Pridgen v. Office of Management & Budget*, 2022 MSPB 31, ¶¶ 22, 42.  Because the administrative judge found that the appellant failed to prove that his sex, race, or national origin was a motivating factor in his removal, and the parties have not disagreed on review, we do not reach the question of whether his sex, race, or national origin was a but-for cause of the removal action. *Id.*, ¶ 22.

> On remand, if the agency meets its burden, the administrative judge should consider the appellant's harmful error claim.

¶30    Because she found that the agency failed to meet its burden, the administrative judge found it unnecessary to address the appellant's claim of harmful procedural error.  ID at 22 n.12.  The appellant alleged that his PIP used the wrong performance standards and this resulted in a harmful error. I-2 AF, Tab 29 at 17; *see generally* 5 C.F.R. § 1201.56(b)(2)(i)(C) (recognizing that an appellant bears the burden of proving harmful procedural error by preponderant evidence); *Stephen v. Department of the Air Force*, 47 M.S.P.R. 672, 681, 685 (1991) (recognizing that an agency error is harmful only when the record shows that the procedural error was likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error).  If, on remand, the administrative judge finds the agency met its burden, she should make findings on the appellant's harmful error claim.

¶31    In conclusion, we must remand the appeal in light of *Santos*.  On remand, the administrative judge shall accept argument and evidence on the issue of whether the appellant's performance was unacceptable prior to the agency placing him on a PIP.  The administrative judge should also permit the parties to present evidence as to why some of the appellant's PIP meetings ended early.  She shall hold a supplemental hearing if appropriate.  *See Lee*, 2022 MSPB 11, ¶ 17. The administrative judge shall then issue a new initial decision consistent with *Santos*.  *See id.*

¶32    If the agency makes the additional showing required under *Santos* on remand, the administrative judge may incorporate her prior findings regarding the agency proving that OPM approved its performance appraisal system, the agency communicating to the appellant his performance standards, and the validity of its performance standards.  *See supra* ¶ 5.  The administrative judge should then revisit her findings, consistent with our guidance above, regarding the agency's burden of proving that it gave the appellant a reasonable opportunity to improve

and demonstrate acceptable performance and that his performance remained unacceptable. *Supra* ¶¶ 7-26. If the argument or evidence on remand regarding the appellant's pre-PIP performance and the reason some PIP meetings ended early affects the administrative judge's analysis of the agency's burden or the appellant's affirmative defenses, she should address such argument or evidence in the remand initial decision, while also ensuring that the correct standards are applied. *See Spithaler v. Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980) (explaining that an initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the administrative judge's conclusions of law and his legal reasoning, as well as the authorities on which that reasoning rests); *supra* ¶ 27 n.10, ¶ 28.

## ORDER

¶33      For the reasons discussed above, we REMAND this case to the regional office for further adjudication in accordance with this Remand Order.

FOR THE BOARD:            /s/ for

                            Jennifer Everling
                            Acting Clerk of the Board

Washington, D.C.