# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

DAVID E. MCCULLIN,
        Appellant,

      v.

DEPARTMENT OF HOMELAND
  SECURITY,
        Agency.

DOCKET NUMBER
DC-0432-17-0588-I-1

DATE: July 27, 2023

# THIS ORDER IS NONPRECEDENTIAL[1]

David E. McCullin, Brentwood, Maryland, pro se.

Felippe Moncarz, Esquire, Washington, D.C., for the agency.

### BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

### REMAND ORDER

¶1      The appellant has filed a petition for review of the initial decision, which affirmed his removal for unacceptable performance pursuant to 5 U.S.C. chapter 43 and denied his affirmative defenses. For the reasons discussed below, we GRANT the appellant's petition for review, VACATE the initial decision, and

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

REMAND the case to the Washington Regional Office for further adjudication in accordance with this Remand Order and *Santos v. National Aeronautics and Space Administration*, 990 F.3d 1355 (Fed. Cir. 2021).

## BACKGROUND

¶2        Pursuant to 5 U.S.C. chapter 43, the agency removed the appellant for unacceptable performance in one critical element of his position as a GS-14 Physical Security Specialist in its Office of Infrastructure Protection (OIP), Infrastructure Security Compliance Division (ISCD).  Initial Appeal File (IAF), Tab 5 at 22-26, 134.  The mission of the OIP is to "lead the coordinated national effort to reduce the risk to our critical infrastructure and key resources posed by acts of terrorism and strengthen national preparedness, timely response, and rapid recovery in the [e]vent of an attack, natural disaster, or other emergency." *Id.* at 136.  The ISCD focuses on high-risk chemical facilities.  *Id.*  One duty of a GS-14 Security Specialist in ISCD is to "[p]erform[] vulnerability identification, risk analysis, assessment of evolving threats, information security, physical security, and information technology security."  *Id.*  One critical element of the appellant's written performance plan, known as the "Post Approvals" goal, provides as follows:

> Review Site Security Plans (SSPs) and Alternative Security Programs (ASPs) submitted after approval to identify all relevant changes and analyze whether these changes affect the facility's ability to satisfy all applicable Risk Based Performance Standards (RBPS) . . . .  Review must be complete and accurate in order to ensure no more than 10% are returned for correction.

*Id.* at 99, 103.  The agency determined that the appellant had an unacceptable return rate of 55.6% between August 20 and October 17, 2016, and placed him on a 90-day Performance Improvement Plan (PIP) effective from October 31 through January 31, 2017.  *Id.* at 99, 109.  The agency found that, during the PIP, the appellant's performance in the Post Approvals goal remained unacceptable (9 of the 11 Post Approval reviews he completed, or 81%, were returned for correction), and it effected his removal.  *Id.* at 22-26, 57-58.

¶3    The appellant timely filed his initial appeal. IAF, Tab 1. During a status conference, the appellant withdrew his request for a hearing and requested a decision based on the written record. IAF, Tab 8 at 4. In an initial decision dated November 15, 2017, the administrative judge affirmed the performance-based removal action and denied the appellant's affirmative defenses. IAF, Tab 23, Initial Decision (ID) at 5-15. The administrative judge found that the agency established the following by substantial evidence: (1) the Office of Personnel Management (OPM) approved its performance appraisal system and any significant changes thereto; (2) the agency communicated to the appellant the performance standards and critical elements of his position; (3) the appellant's performance standards were valid under 5 U.S.C. § 4302; (4) the agency warned the appellant of the inadequacies of his performance during the appraisal period and gave him an adequate opportunity to improve; and (5) after an adequate improvement period, the appellant's performance remained unacceptable in at least one critical element. ID at 4-10 & n.1. He found that the appellant failed to establish that retaliation for prior equal employment opportunity (EEO) activity or age-based discrimination were motivating factors in his removal or that the contested performance metric disparately impacted individuals over 40. ID at 10-15.

¶4    The appellant filed a petition for review on December 21, 2017. Petition for Review (PFR) File, Tab 1. The Clerk of the Board issued a notice to the appellant informing him that his petition was untimely filed because it was not filed on or before December 20, 2017. PFR File, Tab 2 at 1. The Clerk instructed the appellant how to file a motion to accept the petition as timely or to waive the time limit for good cause. *Id.* at 2. The appellant did not file any such motion. The agency filed a response opposing the petition for review on the merits and as untimely filed. PFR File, Tab 5.

## DISCUSSION OF ARGUMENTS ON REVIEW

*We find good cause for the appellant's untimely filed petition for review.*

¶5        A petition for review generally must be filed within 35 days after the date of the issuance of the initial decision or, if the party filing the petition shows that the initial decision was received more than 5 days after it was issued, within 30 days after the party received the initial decision.  5 C.F.R. § 1201.114(e). The initial decision was issued on November 15, 2017, and the petition for review was due by December 20, 2017.  Thus, the appellant filed his petition for review 1 day late, on December 21, 2017.  PFR File, Tab 1.

¶6        The Board will waive the time limit for filing a petition for review only upon a showing of good cause for the delay in filing.  5 C.F.R. §§ 1201.113(d), 1201.114(f).  The party who submits an untimely petition for review has the burden of establishing good cause for the untimely filing by showing that he exercised due diligence or ordinary prudence under the particular circumstances of the case. *Sanders v. Department of the Treasury*, 88 M.S.P.R. 370, ¶ 5 (2001). To determine whether a party has shown good cause, the Board will consider the length of the delay, the reasonableness of the party's excuse and his showing of due diligence, whether he is proceeding pro se, and whether he has presented evidence of the existence of circumstances beyond his control that affected his ability to comply with the time limits or of unavoidable casualty or misfortune that similarly shows a causal relationship to his inability to timely file his petition. *Moorman v. Department of the Army*, 68 M.S.P.R. 60, 62-63 (1995), *aff'd*, 79 F.3d 1167 (Fed. Cir. 1996) (Table).

¶7        Under limited circumstances, the Board will excuse delays in filing caused by difficulties encountered with the e-Appeal system. *E.g.*, *Salazar v. Department of the Army*, 115 M.S.P.R. 296, ¶¶ 6-8 (2010) (excusing a filing delay when the appellant alleged that he attempted to electronically file his petition for review on time and the e-Appeal system showed that he had, in fact, accessed the system prior to the date that his petition was due and, after he became aware that

his petition had not been filed, the appellant promptly contacted the Board and submitted a petition for review that included an explanation of his untimeliness); *Lamb v. Office of Personnel Management*, 110 M.S.P.R. 415, ¶ 9 (2009) (finding good cause for the untimely filing of a petition for review when the appellant reasonably believed he timely filed his appeal by completing all questions on the appeal form and exited the website without receiving a clear warning that his appeal was not filed).  In his petition for review filed on December 21, 2017, the appellant asserted that he had filed the petition the previous day but that he received an email that day "stating that the petition was not submitted." PFR File, Tab 1 at 3.  The Board's e-Appeal logs show that, although the appellant created his petition at 3:09 p.m. on December 20, 2017, the day of the filing deadline, he did not complete the electronic submission until 3:42 p.m. on December 21, 2017.  PFR File, Tab 1.  When an individual saves a draft petition for review in the e-Appeal system, the system automatically generates an email to him on each of the following 3 calendar days warning that the pleading has not yet been submitted.

¶8	We find that the appellant exercised due diligence under the particular circumstances of his case.  The Board's e-Appeal logs support the appellant's statement that he submitted his petition for review following the receipt of an email notifying him that his saved pleading had not been submitted.  PFR File, Tab 1 at 3.  Therefore, we find that the appellant has shown good cause for his minimal delay in filing.

The administrative judge did not abuse his discretion in denying the appellant's motion to compel the agency's responses to his discovery requests.

¶9	The appellant argues that the "standards of discovery were unreasonable." PFR File, Tab 1 at 5.  He argues that the administrative judge should have given him "more leniency" regarding his motion to compel discovery because he could not afford representation and was proceeding pro se.  *Id.*  He argues that he

should have been "given at least one additional opportunity" to correctly file his motion to compel. *Id.*

¶10 The Board will not reverse an administrative judge's rulings on discovery matters, including a motion to compel, absent an abuse of discretion. *Fox v. Department of the Army*, 120 M.S.P.R. 529, ¶ 42 (2014). Here, the administrative judge denied the appellant's motion to compel the agency's responses to his discovery requests, finding that he had failed to comport with the Board's requirement that any such motion include a copy of the original discovery request, a copy of the response or objections, and a statement showing a good faith attempt to resolve the dispute before filing the motion. IAF, Tabs 10, 14, 16; *see* 5 C.F.R. § 1201.73(c)(1). The record shows that, although the appellant was put on notice of the potential deficiencies in his motion to compel by the agency's opposition motion, IAF, Tab 14 at 3, he filed no reply or other supplementary pleading. The appellant has not shown error in the administrative judge's findings on his discovery request, and therefore, he has failed to show an abuse of discretion in the denial of discovery. To the extent that the appellant felt disadvantaged by a lack of representation, it is well established that an appellant who chooses to proceed pro se must accept the consequences of that decision. *See Yanopoulos v. Department of the Navy*, 796 F.2d 468, 470 (Fed. Cir. 1986); *Brum v. Department of Veterans Affairs*, 109 M.S.P.R. 129, ¶ 5 (2008).

We remand the appeal for further findings on some of the elements of performance-based actions under chapter 43.

¶11 At the time the initial decision was issued, the Board's case law stated that, to prevail in an appeal of a performance-based action under 5 U.S.C. chapter 43, an agency must establish the following elements by substantial evidence: (1) OPM approved its performance appraisal system and any significant changes thereto; (2) the agency communicated to the appellant the performance standards and critical elements of his position; (3) the appellant's performance standards are valid under 5 U.S.C. § 4302; (4) the agency warned the appellant of the

inadequacies of his performance during the appraisal period and gave him a reasonable opportunity to demonstrate acceptable performance; and (5) the appellant's performance remained unacceptable in one or more of the critical elements for which he was provided an opportunity to demonstrate acceptable performance. *Lee v. Environmental Protection Agency*, 115 M.S.P.R. 533, ¶ 5 (2010). Substantial evidence is the "degree of relevant evidence that a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion, even though other reasonable persons might disagree." 5 C.F.R. § 1201.4(p).

¶12     On review, the appellant does not challenge that the action was affected under a performance appraisal system approved by OPM or that the contested performance standard was clearly communicated to him. ID at 4-5 & n.1; PFR File, Tab 1. He reasserts his arguments regarding the validity of the Post Approvals performance goal, under which a Physical Security Specialist must obtain a return rate of less than 10% from his supervisor for security reviews, asserting that the requirements were "constantly changing" and that an objective criterion such as a numerical return rate cannot be used for assignments requiring subjective judgments. PFR File, Tab 1 at 5; IAF, Tab 1 at 5, Tab 2 at 9-14, Tab 5 at 103. He argues that the administrative judge erroneously found that the agency had proven that it had given him a reasonable opportunity to improve his performance and that the administrative judge ignored the evidence regarding the agency's alleged "manipulation" of his return rate. PFR File, Tab 1 at 6; IAF, Tab 1 at 5, Tab 2 at 9-14. Finally, the appellant contests the administrative judge's finding that the agency proved by substantial evidence that his performance remained unacceptable. PFR File, Tab 1 at 6-7; ID at 9-10. Regarding this finding, he argues that the administrative judge failed to consider the evidence he submitted purportedly showing that his team leader made errors in reviewing his reports, which impacted his increasing return rate. PFR File, Tab 1 at 7. The appellant further asserts that, in arguing that he submitted reports

close to the deadline, the agency effectively admitted that they did not provide him timely feedback. *Id.*

¶13 The appellant submits certain evidence for the first time on review, namely a declaration of a former colleague seemingly contained in a Report of Investigation regarding an EEO complaint filed by the appellant. *Id.* at 10-15. He asserts that the purported new evidence supports his argument that the "standards for Post Approval writing were not understood." *Id.* at 5. The appellant offers no explanation why the declaration that he obtained from the same colleague and submitted into the record below did not address this information, and he has failed to show that the declaration is new or material evidence. IAF, Tab 18 at 4-5; *see Russo v. Veterans Administration*, 3 M.S.P.R. 345, 349 (1980) (stating that the Board generally will not grant a petition for review based on "new" evidence absent a showing that it is of sufficient weight to warrant an outcome different from that of the initial decision); *Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 214 (1980) (stating that, under 5 C.F.R. § 1201.115, the Board will not consider evidence submitted for the first time with the petition for review absent a showing that it was unavailable before the record was closed despite the party's due diligence). To constitute new and material evidence, the information contained in the documents, not just the documents themselves, must have been unavailable despite due diligence when the record closed. *Grassell v. Department of Transportation*, 40 M.S.P.R. 554, 564 (1989); 5 C.F.R. § 1201.115(d). The appellant has not made such a showing regarding the declaration, which was executed more than 1 month prior to the close of the record, or information contained therein, all of which predated the appellant's removal. Thus, we have not weighed this evidence in reaching the decision to grant the petition for review, although the administrative judge may consider this evidence on remand.

> *We agree with the administrative judge that the agency satisfied its burden to prove elements (1)-(3) of a chapter 43 action under the law in effect at the time of the initial decision.*

¶14        As stated above, the appellant does not challenge the administrative judge's findings regarding the first two elements of proving a chapter 43 performance-based action—that the action was affected under a performance appraisal system approved by OPM or that the contested performance standard was clearly communicated to him.  ID at 4-5 & n.1; PFR File, Tab 1.  Regarding the third element, we agree with the administrative judge that the agency proved by substantial evidence that the Post Approvals performance standard was valid.  As set forth in the initial decision, 5 U.S.C. chapter 43 requires that performance standards, to the maximum extent feasible, permit the accurate evaluation of performance on the basis of objective criteria.  ID at 6 (citing *Towne v. Department of the Air Force*, 120 M.S.P.R. 239, ¶ 21 (2013)); *see* 5 U.S.C. § 4302(c)(1).[2]  When, as here, the position involves technical expertise and assessment, standards may require a degree of subjective judgment that would not be necessary or proper in a position of less professional or technical nature.  ID at 7 (citing *Greer v. Department of the Army*, 79 M.S.P.R. 477, 484 (1998)).  The administrative judge found that the Post Approvals goal provided an objective measurement of performance—requiring a return rate of 10% or less—and that the standard was reasonable and realistic.  ID at 7-8.  The appellant's argument that objective criteria cannot be used to evaluate work product that requires subjective judgments is unpersuasive.  PFR File, Tab 1 at 5; *cf. Towne*, 120 M.S.P.R. 239, ¶ 21 (holding that a performance standard is not valid if it does not set forth the minimum level of acceptable performance).

¶15        Although the appellant argues on review that the requirements for reports were "constantly changing" and that "there was no previous guidance that would

---

[2] At the time the initial decision was issued, this provision was designated as 5 U.S.C. § 4302(b)(1).

have prevented [a] return," PFR File, Tab 1 at 5, the administrative judge correctly noted that the agency issued a detailed 15-page post-approval review protocol, ID at 7; IAF, Tab 5 at 63-78. The appellant's supervisor circulated a draft of this protocol to his team approximately 10 days prior to placing the appellant on the PIP, and the team provided input into the protocol. IAF, Tab 5 at 111-27. To the extent that he argues that the Post Approvals standard lacked specificity prior to this date, it is well established that an agency can flesh out vague terminology in a performance standard through additional written or oral communications, including communications during the PIP period. *See Towne*, 120 M.S.P.R. 239, ¶ 23. Therefore, we agree with the administrative judge's findings with regards to elements (1)-(3). ID at 6-8.

*We remand the appeal for further findings on elements (4) and (5).*

¶16        The appellant asserts that he was not given a reasonable opportunity to demonstrate acceptable performance because the agency manipulated his return rate data. PFR File, Tab 1 at 6-7. In his response to the affirmative defenses order, the appellant argued that "given [his] education and experience . . . the only way [his] return rate could increase from 15 to 80% [was] through manipulation." IAF, Tab 11 at 4-5. On review, the appellant argues that the administrative judge "ignore[d]" the evidence "on how the return rate can be manipulated." PFR File, Tab 1 at 6. He argues that the agency denied his request for a "blind reading" of his reports, misled him into thinking that collaboration outside of his section would not impact his return rate, and denied his request—as a reasonable accommodation for dyslexia—for exclusion of the return rate as a performance metric applicable to him, which he alleges demonstrated the agency's intent to use a false return rate to support the removal action. *Id.* He also disputes the errors and deficiencies in his work product identified by his team leader. *Id.* at 7-9. These arguments were raised before the administrative judge. IAF, Tab 2 at 12-14, Tab 5 at 31, Tab 11 at 4-5, 12-15. In accepting the agency's numeric assessment of the appellant's return rate as corroborated by

documentary evidence of deficiencies in the appellant's work product, the administrative judge appears to have implicitly rejected the appellant's contention that his return rate was manipulated. ID at 8-10. Under the circumstances, we find that the administrative judge's analysis of elements (4) and (5) needs further examination, and we direct him to consider and make explicit findings as to the appellant's contention that the agency improperly manipulated his return rate in a new initial decision on remand. PFR File, Tab 1 at 6-7.

¶17    In addition, the administrative judge does not appear to have addressed the appellant's arguments regarding the failure to accommodate his dyslexia. IAF, Tab 2 at 14, Tab 11 at 15. We direct the administrative judge to notify the appellant of his burden and standard of proof regarding such an affirmative defense, clarify the appellant's intent regarding this allegation, and adjudicate the issue as necessary. *See Haas v. Department of Homeland Security*, 2022 MSPB 36, ¶¶ 28-29; *Miller v. Department of the Army*, 121 M.S.P.R. 189, ¶ 13 (2014) (explaining an appellant's burden of proof for a claim of discrimination based on failure to accommodate a disability); *see also Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶ 17 (2015) (remanding for notice and adjudication of an affirmative defense that was raised by the appellant but not addressed by the administrative judge).

> *On remand, the administrative judge must afford the parties an opportunity to submit evidence and argument regarding whether the appellant's placement on a PIP was proper.*

¶18    During the pendency of the petition for review in this case, the U.S. Court of Appeals for the Federal Circuit held in *Santos*, 990 F.3d at 1360-61, that, in addition to the five elements of the agency's case set forth in the initial decision, the agency must also justify the institution of a PIP by proving by substantial evidence that the employee's performance was unacceptable prior to the PIP. The Federal Circuit's decision in *Santos* applies to all pending cases, including this one, regardless of when the events took place. *Lee v. Department of Veterans*

*Affairs*, [2022 MSPB 11](#), ¶ 16. Accordingly, on remand, the administrative judge shall give the parties the opportunity to present argument and additional evidence (including the declaration of the appellant's former colleague mentioned above) on whether the appellant's performance during the period leading up to the PIP was unacceptable in one or more critical elements and hold a hearing if appropriate. *Id.*, ¶¶ 15-17.

¶19    The administrative judge shall then issue a new initial decision consistent with *Santos*. *See id.* The administrative judge may incorporate his prior findings on elements (1)-(3) of the agency's case in the new initial decision. *See id.* If the argument or evidence on remand regarding the appellant's pre-PIP performance relates to the other elements of the agency's case, the administrative judge should address such argument or evidence in the remand initial decision. *See Spithaler v. Office of Personnel Management*, [1 M.S.P.R. 587](#), 589 (1980) (explaining that an initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the administrative judge's conclusions of law and his legal reasoning, as well as the authorities on which that reasoning rests).

The administrative judge should reevaluate the appellant's affirmative defenses on remand.

¶20    New argument or evidence on remand on the issue of the appellant's pre-PIP performance and/or failure to accommodate claim may affect the administrative judge's analysis of the appellant's other affirmative defenses. ID at 10-15; *see Spithaler*, 1 M.S.P.R. at 589. Regarding the appellant's retaliation claims, the administrative judge should identify the specific EEO activity or other protected activity alleged by the appellant and evaluate the claims under the different standards of proof applicable to such claims consistent with our recent decision in *Pridgen v. Office of Management and Budget*, [2022 MSPB 31](#). We note that the administrative judge should also consider the appellant's assertion in his petition for review regarding an email message he sent

to his supervisor approximately 1-1/2 months prior to being placed on a PIP in evaluating this defense. PFR File, Tab 1 at 7.

¶21 Regarding the appellant's age-based disparate impact claim,[3] we agree with the administrative judge that the appellant's claim fails because he has presented insufficient statistical evidence to conclude that the return rate metric disparately impacted workers over the age of 40. ID at 14-15; *see Warner v. Department of the Interior*, 115 M.S.P.R. 281, ¶ 8 (2010) (setting forth the elements of a prima facie case of a disparate impact violation of the ADEA). The administrative judge may incorporate this finding, which is unlikely to be affected by new evidence and argument on remand,[4] in the new remand decision. ID at 14-15.

## ORDER

¶22 For the reasons discussed above, we REMAND this case to the Washington Regional Office for further adjudication in accordance with this Remand Order.

FOR THE BOARD:                    /s/ for
                                   _____
                                   Jennifer Everling
                                   Acting Clerk of the Board

Washington, D.C.

---

[3] The appellant does not challenge the administrative judge's finding that he failed to present argument or evidence supporting age-based discrimination under other theories. ID at 11; PFR File, Tab 1 at 5-9. We agree with the administrative judge's findings. The administrative judge may incorporate these findings in the new remand decision if they are unaffected by new evidence and argument on remand.

[4] The record will be open for evidence and argument on the issues of the appellant's pre-PIP performance and failure to accommodate claim.