# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| CARL NEWHOUSE, | DOCKET NUMBER |
| Appellant, | SF-0752-23-0400-I-1 |
| v. | |
| DEPARTMENT OF THE AIR FORCE, | DATE: March 27, 2025 |
| Agency. | |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Wayne Perryman, Mercer Island, Washington, for the appellant.

Benjamin Signer, Esquire, Joint Base Andrews, Maryland, for the agency.

## BEFORE

Henry J. Kerner, Vice Chairman
Cathy A. Harris, Member

## FINAL ORDER

The appellant has filed a petition for review of the initial decision, which dismissed his involuntary resignation appeal for lack of jurisdiction. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to find that the appellant was not a qualified individual with a disability and to supplement the analysis of his intolerable working conditions claim, we AFFIRM the initial decision.

## BACKGROUND

The appellant was a GS-12 Community Support Coordinator (CSC) assigned to the 62d Airlift Wing at the agency's Lewis-McChord Air Force Base in Pierce, Washington. Initial Appeal Tab (IAF), Tab 7 at 11. The purpose of his position was to analyze and evaluate issues on the Base relating to individual, family, and community resilience and individual preparedness. IAF, Tab 22 at 5. His major responsibilities included heading up "resilience efforts," i.e., "mental, physical, social, and spiritual fitness initiatives, programs, and activities" on the Base, including serving as the Community Action Board (CAB) Executive Director. *Id.* at 5-6. In these various capacities he was responsible for analyzing issues, such as quality of life on base, formulating long-term solutions, and then implementing those solutions via community outreach and prevention programs on Base. *Id.* at 5. He was also responsible for developing the bi-annual Community Action Plan (CAP), orchestrating quarterly CAB meetings and all supporting activities leading to and following meetings, "monitoring and overseeing the "use of authorized [CAB] funds" and resilience programs, and Wingman Days. *Id.*

In March 2021, the 62d Airlift Wing's Director of Staff advised the appellant and his coworkers that the agency planned to return employees to work following its full telework policy initiated at the beginning of the COVID-19 pandemic.  IAF, Tab 18 at 6, Tab 25 at 6-7.  The appellant responded to his supervisor that he was at risk of complications from COVID-19 due to his underlying conditions of obesity and diabetes, and that under the agency's guidance he was a "vulnerable individual" who should "shelter in place."  IAF, Tab 25 at 5.

The appellant then had a period of absence in May and June 2021 due to a COVID infection and pneumonia.  IAF, Tab 4 at 23-24, Tab 12 at 92.  He initially sought and was granted Family and Medical Leave (FMLA)-protected leave through September 2021.  IAF, Tab 4 at 6; Tab 12 at 104.  The appellant returned to working partial days while still using FMLA-protected leave, but it is unclear if his work was done from the office or from home at that time.  IAF, Tab 4 at 6, Tab 12 at 60, 104.

He advised the agency on September 29, 2021, that he was unable to perform "additional catch all" responsibilities in 4 hours of work per day without it being a detriment to his health.  IAF, Tab 4 at 6.  He submitted doctor's notes in October and November 2021, indicating that he required a variety of reasonable accommodations for ongoing medical conditions, including syncope. IAF, Tab 12 at 26-29, Tab 13 at 31.  In particular, he requested to work half of his days (4 hours) in the office and the other half (4 hours) at home, i.e., 50% telework.  IAF, Tab 12 at 28, 30.  The agency's Disability Program Manager denied his request on December 9, 2021, asserting that the appellant needed to be in the office full-time for in-person interactions.  *Id.* at 33.  The agency offered him the alternative accommodation of working 2 half days at home and 3 full days in the office, i.e., 20% telework.  *Id.* at 34.  The appellant began working under this schedule on December 20, 2021.  *Id.* at 83, 87.

After the appellant's supervisor met with him to discuss his schedule, performance, and other matters, the appellant sought Equal Employment Opportunity (EEO) counseling on January 24, 2022, but his concerns were not resolved during the informal process. IAF, Tab 1 at 15, Tab 4 at 30-32, Tab 19 at 4-5. On February 26, 2022, the agency advised the appellant of his right to file a formal EEO complaint. IAF, Tab 11 at 38. He resigned the same day, effective March 12, 2022, claiming that he was subjected to discrimination and harassment that exacerbated a mental health condition (PTSD). IAF, Tab 1 at 14-15, 20-24, Tab 12 at 35.

The appellant filed a formal complaint of discrimination on March 6, 2022, which included a constructive removal claim. IAF, Tab 1 at 14-15, Tab 7 at 10. On May 12, 2023, the agency issued a Final Agency Decision (FAD) on the appellant's EEO complaint finding no discrimination, and the appellant timely filed the instant appeal. IAF, Tab 1 at 14, 24-26. The administrative judge found that the appellant had made nonfrivolous allegations sufficient to warrant a jurisdictional hearing on his involuntary resignation claim. IAF, Tab 9 at 2-5. The appellant later withdrew his request for a hearing, and the case was decided on the written record. IAF, Tab 1 at 2, Tab 16 at 4.

The administrative judge issued an initial decision dismissing the appeal for lack of jurisdiction. IAF, Tab 38, Initial Decision (ID) at 1, 19. She was not persuaded by the appellant's arguments that the agency improperly denied him his requested reasonable accommodation. ID at 14-18. She credited the declaration of the appellant's first-level supervisor that 5 half days per week of telework was inconsistent with the appellant's essential duties and that other employees had been required to fulfill his duties when he teleworked in the past. ID at 15-16. The administrative judge was not convinced by the appellant's argument that the fact that the agency had 100% telework due to the pandemic demonstrated that he could perform his duties remotely full-time. ID at 16-17. The administrative judge also concluded that the appellant's work assignments

and the agency's handling of his reasonable accommodation request did not create intolerable working conditions that would cause a reasonable person to feel he had no choice but to resign. ID at 18-19.

The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 1. The agency filed a response to the petition for review, to which the appellant has replied. PFR File, Tabs 3-4.

## DISCUSSION OF ARGUMENTS ON REVIEW

The administrative judge found that the appellant did not prove by a preponderance of the evidence that his resignation was involuntary due to the agency's denial of his requested reasonable accommodation or due to intolerable working conditions. ID at 14, 19. The appellant disputes both of these findings on review.[2] PFR File, Tabs 1, 4.

An employee-initiated action, such as a resignation, is presumed to be voluntary, and thus outside the Board's jurisdiction, unless the employee presents sufficient evidence to establish that the action was obtained through duress or coercion or show that a reasonable person would have been misled by the agency. *Searcy v. Department of Commerce*, 114 M.S.P.R. 281, ¶ 12 (2010) (citing *Staats v. U.S. Postal Service*, 99 F.3d 1120, 1123-24 (Fed. Cir. 1996)). The appellant here has not alleged that his resignation resulted from agency misinformation. Rather, he has argued that he resigned due to the denial of his reasonable

---

[2] The appellant also argues on review that the agency did not submit the prior teleworking agreement into the record and appears to assert that the administrative judge should have required the agency to submit evidence that the CSC position could not be "duplicated in a teleworking environment." PFR File, Tab 1 at 9-10. The appellant's arguments provide no basis to disturb the initial decision. As discussed below, the appellant, not the agency, bears the burden of proof. Further, the appellant submitted the telework agreement into the record below, and it was considered by the administrative judge. IAF, Tab 18; ID at 2; *see McIntire v. Federal Emergency Management Agency*, 55 M.S.P.R. 578, 584-85 (1992) (concluding that, even if an administrative judge erred in drawing an adverse inference against a party, the error did not impact the Board's decision and therefore did not warrant reversal of the initial decision).

accommodation request and a hostile work environment. A resignation may be rendered involuntary by the agency's improper denial of an employee's request for reasonable accommodation. *See Hosozawa v. Department of Veterans Affairs*, 113 M.S.P.R. 110, ¶ 7 (2010); *Williams v. Department of Agriculture*, 106 M.S.P.R. 677, ¶ 13 (2007). A resignation may also be rendered involuntary due to intolerable working conditions that made it so difficult that a reasonable person in that employee's position would have felt compelled to resign. *Brown v. U.S. Postal Service*, 115 M.S.P.R. 609, ¶ 10 (2011), *aff'd per curiam*, 469 F. App'x 852 (Fed. Cir. 2011).

<u>We modify the initial decision to find that the appellant did not prove that he could perform the essential functions of the CSC position with or without reasonable accommodation.</u>

The administrative judge found that the appellant did not prove that the agency's denial of his request to telework 50% of the time rendered his resignation involuntary. ID at 14-18. In doing so, she reasoned that the agency engaged in an interactive process with the appellant to find an alternative and effective accommodation to teleworking 4 hours per day. *Id.* In reaching those findings, the administrative judge concluded that the appellant did not prove that he was unable to perform his essential functions with the provided accommodation. We disagree. ID at 17-18. However, for the reasons explained below, we find that remand is unnecessary because the record on this issue is fully developed. *See, e.g.*, *Forte v. Department of the Navy*, 123 M.S.P.R. 124, ¶ 27 (2016) (deciding an appellant's claim of status-based discrimination on review, rather than remanding, when the administrative judge applied an incorrect standard but the record was fully developed). We modify the initial decision to find that the appellant did not prove that he was a qualified individual with a disability.

*Because he did not prove he was a qualified individual with a disability, the appellant also did not prove that the agency improperly denied his reasonable accommodation request.*

To prove that his resignation amounted to a constructive removal, the appellant must show that (1) he lacked a meaningful choice in the matter, and (2) it was the agency's wrongful actions that deprived him of that choice. *Bean v. U.S. Postal Service*, 120 M.S.P.R. 397, ¶¶ 8, 11 (2013). The appellant reasserts on review that his resignation was the result of the agency's wrongful denial of reasonable accommodation. PFR File, Tab 1 at 5-8.

To prevail on a claim that the agency denied him a reasonable accommodation, an appellant must prove that he is a qualified individual with a disability, meaning that he can "perform the essential functions" of his position or one he desires with or without reasonable accommodation. 42 U.S.C. §§ 12111(8), 12112(b)(5); *Haas v. Department of Homeland Security*, 2022 MSPB 36, ¶ 28. As discussed below, based on the appellant's own statements and other record evidence, we conclude that the appellant did not prove that he was a qualified individual with a disability because he did not meet the essential functions of his position with or without accommodation.

On review, the appellant continues to argue that his ability to telework during the pandemic is proof that in-person interaction was not required to complete the essential functions of his position. PFR File, Tab 1 at 9-10. Because we conclude that the appellant did not prove that he could perform the essential duties of his position even with the accommodation he requested, we need not reach the issue of whether in-person interaction was necessary to fulfill those duties. We modify the initial decision to the extent that the administrative judge found that "the appellant offer[ed] no evidence to suggest that he was unable to complete the essential function of his job with the accommodation he was granted." ID at 17-18. Because the appellant failed to prove he was a

qualified individual with a disability, he also failed to prove that the agency's alleged denial of his reasonable accommodation request was wrongful.

By October 2021, the appellant had exhausted his FMLA-protected leave. IAF, Tab 12 at 30. That month, he advised the agency's Disability Program Manager that his medical condition of syncope negatively impacted "cognitive processes," which in turn affected his work. *Id.* In November 2021, the appellant indicated to his first-level supervisor that he had been unable to comprehend or respond to his supervisor the prior day due to his health issues. IAF, Tab 13 at 31. He indicated that this difficulty "occur[red] sporadically." *Id.* In December 2021, in denying the appellant's request for 50% telework, the agency noted that situational telework remained available to the appellant. IAF, Tab 12 at 33-34; PFR File, Tab 3 at 6.

Later that month, when the Director of Staff noted to the appellant errors in his draft of the CAP, the appellant responded that he could not "dictate when [his] body (health) goes south." IAF, Tab 12 at 52, 83-84. He advised the Director of Staff that "if [he] need[ed] to exit the office early on any day to ensure the health safety for [him]self and others," he would continue to do so as he had "been doing since learning of the [reasonable accommodation] decision" earlier that month. *Id.* at 83.

Also in December 2021, the appellant's first-level supervisor received feedback from an agency employee that the appellant was "being overly demanding and inconsiderate of others' time and priorities" in his email communications. *Id.* at 49. This report was consistent with an EEO complaint from a coworker alleging that the appellant mistreated her in June 2021. *Id.* at 49, 134. To address these concerns and "some recent shortfalls in the CSC "primary duties and responsibilities," including a recent late Community Action Plan submittal and a lackluster Wingman Day," the appellant's first-level supervisor and the Command Chief met with the appellant in January 2024. IAF, Tab 4 at 31, Tab 12 at 44-45, 52-53. Leading up to these performance

deficiencies, other agency staff performed tasks that the appellant was unable to complete as a result of his medical condition, including completing the annual CAP, teaching a First Time Airmen Class, assisting with purchases, and carrying out Wingman Days. IAF, Tab 12 at 95. On February 7, 2022, the appellant's first-level supervisor provided the appellant with a written summary of the January 2024 meeting. IAF, Tab 4 at 30-32.

Three days later, on February 10, 2022, the appellant responded in writing to his supervisor's summary of their January 2021 meeting. IAF, Tab 19 at 4-5. He agreed that he was responsible for Wingman Days and the CAP. *Id.* at 5. He acknowledged failures in these programs and blamed staff assigned to assist him and the fact that he "was unable to control factors . . . while ill and out of the office." *Id.* Then, on March 5, 2022, the appellant signed a Standard Form 52, Request for Personnel Action, stating that he had no choice but to resign due to his "intolerable working conditions . . . harmfully impacting [his] impaired physical health condition and [his] mental status." IAF, Tab 1 at 9. According to the appellant, his "very wellbeing physical and mental . . . require[d] that [he] resign." *Id.*

The appellant bears the burden of showing by a preponderance of the evidence that his resignation was involuntary and therefore tantamount to a forced removal. *Freeborn v. Department of Justice*, 119 M.S.P.R. 290, ¶ 9 (2013). An agency is not required to excuse an employee from performing his essential job functions as a reasonable accommodation. *Jewell v. Department of the Interior*, EEOC Appeal No. 0120120023, 2015 WL 3955101, at *2 (June 9, 2015). As outlined above, between October 2021 and his resignation in March 2022, the appellant indicated that his health issues prevented him from understanding and responding to his supervisor and performing essential job duties such as submitting an adequate CAP and hosting Wingman Days. He was unable to fulfill these requirements even when the agency assigned others to

assist him with his work. The appellant has not alleged that he was denied ad hoc telework or leave during this period.

The appellant also has not asserted that he requested reassignment, and did not identify a vacant funded position that he believes he could perform. *See Rosario-Fabregas v. Department of the Army*, 122 M.S.P.R. 468, ¶ 18 (2015) (indicating that an appellant failed to engage in the interactive process when, as relevant here, he did not identify any vacant, funded position to which the agency might have reassigned him), *aff'd*, 833 F.3d 1342 (Fed. Cir. 2016). Instead, he resigned. Therefore, we agree with the administrative judge's finding that the appellant did not prove his claim that a denial of accommodation forced him to resign, but we modify her reasoning as discussed above to find that he failed to prove he was qualified.

In light of this finding, we do not reach the appellant's argument that the agency did not address his requested accommodations beyond his request for telework, failed to engage in the interactive process at various points between October 2021 and January 2022, and should have obtained additional medical information directly from his providers. PFR File, Tab 1 at 4-5, Tab 4 at 6.[3] We also need not decide here whether, as argued by the appellant, the administrative judge was mistaken in stating that the appellant provided no evidence that he was diagnosed with post-traumatic stress disorder. ID at 9 n.4; PFR File, Tab 1 at 8-9. Regardless, because the appellant did not prove he was entitled to

---

[3] We disagree with the agency's position below that it held no responsibility to address the appellant's commuting needs. IAF, Tab 12 at 8, 34. A request for telecommuting or a shorter commuting time because of a disability triggers an agency's responsibility to engage in the interactive process under the Rehabilitation Act. *Barney G. v. Social Security Administration*, EEOC Appeal No. 2021000802, 2022 WL 4546523, at *8 n.6 (Sept. 12, 2022); *Jones v. Department of Agriculture*, EEOC Appeal No. 0120080833, 2012 WL 3059918, *5 (July 18, 2012). However, even if the appellant's requested accommodation was granted, i.e., to telework 4 hours a day, 5 days a week, he would still need to commute 5 days a week. IAF, Tab 12 at 33-34. In addition, as noted above, the agency stated in its decision on his reasonable accommodation request that it would continue to permit the appellant to use situational telework. IAF, Tab 12 at 12, 30, 33-34; PFR File, Tab 3 at 6, Tab 4 at 4-5.

reasonable accommodation, we find that the agency did not constructively remove him.

<u>We affirm as supplemented the administrative judge's finding that the appellant did not prove by a preponderance of the evidence that his resignation was involuntary based on a claim of intolerable working conditions.</u>

The administrative judge briefly addressed the appellant's intolerable working conditions claim. ID at 18-19. We supplement her analysis but still find that the appellant did not prove this claim. When alleging involuntary resignation due to a hostile work environment, the appellant must demonstrate that the employer engaged in a course of action that made working conditions so difficult or unpleasant that a reasonable person in his position would have felt compelled to resign. *Vaughan v. Department of Agriculture*, 116 M.S.P.R.493, ¶ 11 (2011). The Board addresses allegations of discrimination in connection with an alleged involuntary retirement only insofar as those allegations relate to the issue of voluntariness. *Markon v. Department of State*, 71 M.S.P.R. 574, 578 (1996).

On review, the appellant realleges that the agency harassed him by assigning him additional duties normally performed by the Violence Prevention Integrator (VPI) and criticizing his job performance despite its awareness of his medical condition. PFR File, Tab 1 at 7, 13-14, Tab 4 at 5-6. He argues that "being unresponsive to a disabled employee's health challenges while increasing the disabled worker's workload is a form of harassment and often used by employers to pressure the disabled employee into resigning." PFR File, Tab 1 at 7-8. The agency disagrees and argues that the appellant only had to perform one task for the acting VPI. PFR File, Tab 3 at 7-8.

Dissatisfaction with work assignments, a feeling of being unfairly criticized, and difficult or unpleasant working conditions are generally not so intolerable as to compel a reasonable person to resign. *Brown*, 115 M.S.P.R. 609, ¶ 15; *Miller v. Department of Defense*, 85 M.S.P.R. 310, ¶ 32 (2000). The appellant has only identified one event to which he was assigned related to the

VPI position. IAF, Tab 31 at 6. The VPI position became vacant in August 2021, the record reflects that a sergeant was assigned the VPI duties from August 2021 through June 2022, with the appellant serving as a subject matter mentor as needed. IAF, Tab 12 at 43, 54, 94, 98-101, 110, 134-35. After the prior VPI resigned in August 2021, the task of making "a single purchase" related to a pending event fell to the appellant because he was the sole administrator of the account with the designated funds. IAF, Tab 12 at 43, 46, Tab 31 at 6. The record reflects that in September 2021, the appellant emailed his supervisor stating that "all VPI purchases were completed this morning." IAF, Tab 12 at 82, 139-142.

The appellant has not alleged that he was required to complete any other VPI assignments. Therefore, we do not find that the alleged intolerable working condition, an additional assignment completed in September 2021, would have caused a reasonable person to resign effective March of the following year. *See Searcy*, 114 M.S.P.R. 281, ¶ 13 (finding that the 5-month lapse of time between when an appellant initially raised a hostile work environment claim in an EEO complaint and his resignation undercuts his assertion that his working conditions were so intolerable as to have compelled his resignation).

Regarding the appellant's concern that he could have faced possible future disciplinary action, at the time of his resignation there was no discipline pending against him. IAF, Tab 31 at 10; PFR File, Tab 1 at 11, Tab 4 at 8. To prove a constructive discharge, an employee has an obligation to act reasonably, not assume the worst, and not jump to conclusions too quickly. *Miller*, 85 M.S.P.R. 310, ¶ 29; *see Staats*, 99 F.3d at 1124 (concluding that the choice between "two unattractive options" does not render a decision to retire or resign involuntary). We are not persuaded by the appellant's argument that he was concerned about facing possible discipline due to his performance issues.[4] PFR File, Tab 1 at 11.

---

[4] The appellant also frames this argument as an affirmative defense, arguing that his first-line supervisor violated the collective bargaining agreement when he conducted the

Rather, we find that this was an instance of jumping to conclusions and resigning preemptively. *See Schultz v. U.S. Navy*, 810 F.2d 1133, 1136 (Fed. Cir. 1987) ("[W]here an employee is faced merely with the unpleasant alternatives of resigning or being subject to removal for cause, such limited choices do not make the resulting resignation an involuntary act."). Thus, this argument does not provide a basis for disturbing the initial decision and does not establish that his resignation was involuntary.

Accordingly, we agree with the administrative judge's findings, as modified and supplemented above, that the appellant failed to prove that his resignation was involuntary.

## NOTICE OF APPEAL RIGHTS[5]

The initial decision, as supplemented by this Final Order, constitutes the Boards final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your

---

January 24, 2022 meeting without his union representative present. PFR File, Tab 1 at 11. However, in the absence of an otherwise appealable action, the Board lacks jurisdiction over claims of harmful error, prohibited personnel practices, and the agency's failure to comply with regulations. *Penna v. U.S. Postal Service*, 118 M.S.P.R. 355, ¶ 13 (2012); *see also Wren v. Department of the Army*, 2 M.S.P.R. 1, 2 (1980), *aff'd*, 681 F.2d 867 (D.C. Cir. 1982). Because the administrative judge dismissed this appeal for lack of jurisdiction, we do not separately have jurisdiction over the appellant's claim that the agency violated the collective bargaining agreement.

[5] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) <u>Judicial or EEOC review of cases involving a claim of discrimination</u>**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative receives</u> this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[6]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(B).

---

[6] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:  _____

*Gina K. Grippando*

Gina K. Grippando
Clerk of the Board

Washington, D.C.